Carey Bernard **CALDWELL**, **a.k.a. Bernard Talib Din Hasen, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–01–00895–CR to · 01–01–00900–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 12, 2002.

---

Ronald C. Nicholas, Nicholas & Jones, Houston, TX, for Appellant.

Jessica D'Anna, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices TAFT, ALCALA, and PRICE.*

## OPINION

ELSA ALCALA, Justice.

A jury convicted appellant of six separate offenses of securities fraud and assessed punishment for each offense at 18 years' confinement in prison and a $10,000 fine. On appeal, appellant challenges the legal and factual sufficiency of the evidence. Specifically, appellant contends the evidence at trial was legally and factually insufficient to prove that appellant sold or offered to sell a "security" within the meaning of the Texas Securities Act. *See* TEX.REV.CIV. STAT. ANN. art. 581–4(A) (Vernon Supp.2002). We affirm.

---

\* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

## Facts

Viewed in the light most favorable to the jury's verdict, the evidence shows that appellant served as president of TDH Unlimited, Inc. (TDH) from 1989 through 1998. In promoting its enterprise, TDH solicited prospective investors to attend seminars. At the seminars, TDH recruited and signed investors to join the TDH "Investment Club" by paying a $300 annual membership fee. TDH club members were encouraged to participate in the TDH investment program by joining a team and giving the team money to invest. TDH constructed each team to reach an aggregate investment pool of $25,000, the minimum amount required for investment. Investments were obligated for time periods of 12, 15, or 28 months, and TDH told investors to expect profit returns ranging from 100 to 300 percent.

TDH sold the proposition that American rice could be traded for African diamonds, resulting in great profit. Once a team supplied $25,000, TDH told investors that the money would be used to conduct an international "rice for diamonds" exchange. TDH further told investors that Unalat, an Antiguan company, would be performing the "rice for diamonds" exchange, and TDH instructed investors to make traveler's checks payable directly to Unalat.

The investors did not know that appellant was also the president of Unalat. It is unclear whether Unalat ever performed any "rice for diamonds" exchanges. It is clear, however, that money Unalat received was re-routed to various bank accounts before finally being deposited into appellant's personal bank accounts in Houston. From 1993 to 1998, Unalat de-

posited 2.4 million dollars into appellant's Houston accounts.

The evidence indicates that TDH actually served as a vehicle to facilitate appellant's efforts to operate a "Ponzi" scheme,[1] in which earlier investors are paid with money obtained from new investors. The success of this scheme depended on appellant's ability to recruit and sign new investors so that earlier investors could be repaid. As new investors began to decline, and old investors began to demand money, appellant's scheme collapsed, resulting in substantial losses to investors.

### Did appellant sell or offer to sell a "security"?

In two points of error, appellant contends the evidence was both legally and factually insufficient to prove that appellant sold or offered to sell a "security" because investors participated in joint ventures that cannot be properly characterized as securities under the Texas Securities Act. *See* TEX.REV.CIV. STAT. ANN. art. 581–4(A). If appellant is correct, his conviction must be overturned. *See* TEX.REV. CIV. STAT. ANN. art. 581–29 (Vernon Supp. 2002).

### A. Standard of Review

■ When reviewing a legal sufficiency challenge, we ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Santellan v. State,* 939 S.W.2d 155, 160 (Tex.Crim.App.1997); *Howley v. State,* 943 S.W.2d 152, 155 (Tex.App.-Houston [1st Dist.] 1997, no pet.).

■ When reviewing a factual sufficiency challenge, we ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak, or so outweighed by contrary proof, as to undermine confidence in the jury's determination. *King v. State,* 29 S.W.3d 556, 563 (Tex.Crim.App.2000). Accordingly, we will reverse the fact finder's determination only if "a manifest injustice has occurred." *Id.* (quoting from *Johnson v. State,* 23 S.W.3d 1, 12 (Tex.Crim.App.2000)).

### B. Analysis

The term "security" has been defined broadly and encompasses unusual financial instruments as well as those commonly considered securities. *See* TEX.REV.CIV. STAT. ANN. art. 581–4(A). Because the definition of "security" appears to have been taken from an almost identical definition of "security" found in the Federal Securities Act of 1933, 15 U.S.C. § 77b (2002), Texas courts have looked to federal courts when interpreting the definition of "security." *See Searsy v. Commercial Trading Corp.,* 560 S.W.2d 637, 639 (Tex.1977); *Westchester Corp. v. Peat, Marwick, Mitchell, & Co.,* 626 F.2d 1212, 1216–17 (5th Cir.1980). The definition of "security" includes the term "investment contract." *See* TEX.REV. CIV. STAT. ANN. art. 581–4(A).

■ "Investment contract" is defined as (1) an investment of money, (2) in a com-

---

1. "Ponzi scheme" has been defined as a fraudulent investment arrangement whereby an entity makes payments to investors from monies obtained from later investors rather than from profits of the underlying business venture. *See In re Rodriguez,* 209 B.R. 424, 428 (Bankr.S.D.Tex.1997).

mon enterprise, (3) with an expectation of profits, (4) to come solely from the efforts of others. *See Securities & Exchange Comm'n v. W.J. Howey Co.*, 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1946); *Searsy*, 560 S.W.2d at 640; *Adickes v. Andreoli*, 600 S.W.2d 939, 943 (Tex.Civ.App.-Houston [1st Dist.] 1980, writ dism'd).

This appeal involves the fourth prong, "solely from the efforts of others." Appellant suggests that there was no investment contract because (1) investors held team meetings and elected a team leader, (2) funds were used to purchase one commodity and exchange it for another, namely "rice for diamonds," and (3) there was no management or manipulation required by TDH for investors to realize a profit. According to appellant, these facts signify that investors retained some degree of management control over their money and preclude any finding that expected profits derived "solely from the efforts of others."

■ We disagree. The securities laws must operate to give effect to their remedial purposes by allowing substantive "economic realities" to govern over form. *See United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 848, 95 S.Ct. 2051, 2058, 44 L.Ed.2d 621 (1975). Consequently, to ensure that the securities laws are not easily circumvented by agreements requiring a "modicum of effort" on the part of investors, the word "solely" has not been construed literally when determining whether an investment contract existed. *See Searsy*, 560 S.W.2d at 641; *Securities & Exchange Comm'n v. Koscot Interplanetary, Inc.*, 497 F.2d 473, 480 (5th Cir.1974). The critical inquiry is instead "whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enter-

prise." *Searsy*, 560 S.W.2d at 641; *Koscot*, 497 F.2d at 483.

Although the joint venture agreements between TDH and its investors did allot certain powers to investors, those powers can hardly be described as "essential managerial efforts which affect the failure or success of the enterprise." *See id.* Teams did conduct meetings, elect leaders, perform tax planning, and pool new monies for additional investment. However, these acts were ministerial in light of TDH's exclusive contractual authority to "manage, coordinate, invest, sell, buy, host, and coordinate meetings, arrange meeting places, set goals, advisors, counselors, make deposits, disburse funds, and *do all things that are reasonable and necessary to manage the affairs of the TEAM . . . . "* (capitalization in original; emphasis added). Furthermore, TDH expressly agreed to use prudent reliable methods and reasonable care for the safekeeping and proper management of each team's funds and assets. Investors testified that TDH made all of the investment decisions and that investors were not required to do anything more than invest their money. Additionally, many team members neither met nor corresponded with other members of their team. Thus, the "economic reality" is that investors maintained a passive involvement with their investment while expecting profits to be derived solely from the efforts of TDH. *See Forman*, 421 U.S. at 848, 95 S.Ct. at 2058.

The supreme court conveyed its view on a very similar set of facts:

Once a customer has parted with his money, he is dependent upon the financial responsibility, business ability, integrity, expertise and market advice of appellant and, unknown to him, third parties who participate in appellant's commodity trading. It is the essential managerial efforts of those other than

the investor which affect the failure or success of the enterprise. Investors are not required to, and they do not, exert any significant efforts in order to make a profit on their investment. For all practical purposes, the critical manageri-al decisions affecting the investor's funds are solely within the control of the appellant.

*Searsy,* 560 S.W.2d at 641 (citing *Clayton Brokerage Co. of St. Louis v. Mouer,* 520 S.W.2d 802, 809 (Tex.Civ.App.-Austin, writ ref'd n.r.e.), *dism'd as moot on rehearing per curiam,* 531 S.W.2d 805 (Tex.1975)).

 It is no defense to appellant that investors' funds were used to purchase and exchange commodities. An investor in a commodities account who establishes that he or she relied solely on the investment advice of a promoter satisfies the "solely from the efforts of others" requirement. *See Long v. Shultz Cattle Co.,* 881 F.2d 129, 138 n. 8 (5th Cir.1989); *Securities & Exchange Comm'n v. Continental Commodities Corp.,* 497 F.2d 516, 522 (5th Cir.1974). In addition, courts have held that schemes similar to appellant's consti-tuted a sale of "investment contracts" and thus securities. *See Koscot,* 497 F.2d at 485 (holding schemes in which promoters retain essential managerial control over essential managerial functions of enter-prise and where investors' realization of profits is inextricably tied to success of a promotional pyramid scheme constituted security); *see also Securities & Exchange Comm'n v. Unique Financial Concepts, Inc.,* 196 F.3d 1195, 1201 (11th Cir.1999) (holding investment program tied to suc-cess of appellant's "Ponzi" scheme was in-vestment contract); *Securities & Exchange Comm'n v. Infinity Group Co.,* 212 F.3d 180, 189 (3rd Cir.2000) (holding de-fendant sold investment contracts when it substituted new investors' money for real investment return on old investors' funds).

In this case, investors relied solely on TDH's entrepreneurial efforts to pro-duce profit from their investments in the diamond commodities market. We note that although many alternative schemes can be contrived in efforts to exploit pro-spective investors, the concept of "securi-ty" found in the securities laws is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits. *Howey,* 328 U.S. at 299, 66 S.Ct. at 1103. We hold that the evidence at trial was both legally and fac-tually sufficient to find that appellant sold or offered to sell an "investment contract" and thus a "security" under Texas law. *See* TEX.REV.CIV. STAT. ANN. art. 581–4(A). We further hold that the facts appellant relies on do not so weaken or overwhelm the State's evidence as to render the judg-ment clearly wrong and manifestly unjust.

We overrule appellant's first and second points of error.

We overrule all pending motions.

### Conclusion

We affirm the judgment of the trial court.