COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

CAMERON O. BAILEY,

Appellant,

v.

THE STATE OF TEXAS

§
§
§
§
§
§
§

No. 08-02-00424-CR

Appeal from the

283rd Judicial District Court

of Dallas County, Texas

(TC# F-0200037-T)

# **O P I N I O N  ON  REMAND**

Cameron O. Bailey appeals his convictions for the fraudulent sale of securities with an aggregated value of more than $100,000.[1]  Appellant began working for Mr. Kloss at Cornerstone Financial during 1998 in Dallas, Texas.  In February of 1999, the Texas Securities Board contacted Mr. Bailey about one of his products, American Benefits Services Viatical contracts, informing him that he should not be selling the viaticals since they are securities, and he was not registered to sell securities.  In September of 1999, the Securities Board executed a search warrant on Mr. Bailey's office seizing American Benefits material as well as other products.  The Securities Board did not send him a letter or written documentation that sale of CDs would be consider to be the sale of securities.

While employed at Cornerstone, he began offering Cambridge International Bank and

---

[1] This opinion is one of three near identical opinions.  Appellant was convicted in cause numbers F-0200019-T, F-0200035-T, and F-0200037-T with the sale of unregistered securities, selling securities without being a registered dealer, and fraudulent sale of securities with an aggregate value of more than $100,000.

Trust Company Limited Certificates of Deposit. Cambridge is a wholly owned subsidiary of Royal Trust and Bank of Zurich. Many of Mr. Bailey's clients testified they saw an advertisement in the newspaper that offered a high fixed rate of return on insured certificate of deposits (CDs), and met with Mr. Bailey for more information before eventually purchasing the CDs. The testimony followed a similar pattern: Mr. Bailey would assure the client the CDs were a safe investment and insured, the clients would purchase the CDs, and after receiving the initial interest payments, they received nothing further.

William Kerr, a national bank examiner with the Office of the Comptroller of the Currency for the United States Treasury, testified as an expert for the State. Mr. Kerr stated an offshore bank is an institution that is not permitted to operate in the country that issues its charter. The banking laws and regulations for an offshore bank in Grenada requires one to fill out an application, pay a filing fee, and pass a criminal background check. There is almost no supervision of these banks in the country since they do not actually operate in the charter country. Grenada has no deposit insurance plan in place by the government of Grenada, and there have been two bank failures in the past two years of Grenadian banks. There is no formal, enforced regulatory scheme for an offshore bank such as Cambridge International Bank and Trust.

The State also presented expert testimony by David Grauer, Director of the Enforcement Division for the Texas Securities Board outside the presence of the jury. The parties in the case agreed that the trial judge should make the decision of whether the CDs in the case were securities. Mr. Grauer testified as to the definition of a security, the tests used in determining if an instrument is a security, and that in his opinion these certificates of deposits were securities.

The court found that the CDs in this case were securities. The jury found Mr. Bailey

guilty of selling securities without being a registered dealer. The court sentenced him to 8 years' confinement, fined $5,000, and ordered to pay restitution. Appellant's sole issue on appeal is whether the trial court erred in ruling as a matter of law that a certificate of deposit is a security.

The Texas Securities Exchange Act defines a security as:

> The term 'security' or 'securities' shall include any limited partner interest in a limited partnership, share, stock, treasury stock, stock certificate under a voting trust agreement, collateral trust certificate, equipment trust certificate, preorganization certificate or receipt, subscription or reorganization certificate, note, bond, debenture, mortgage certificate or other evidence of indebtedness, any form of commercial paper, certificate in or under a profit sharing or participation agreement, certificate or any instrument representing any interest in or under an oil, gas, or mining lease, fee or title, or any certificate or instrument representing or secured by an interest in any or all of the capital, property, assets, profits or earnings of any company, investment contract, or any other instrument commonly known as a security, whether similar to those herein referred to or not. The term applies regardless of whether the 'security' or 'securities' are evidence by a written instrument. Provided, however, that this definition shall not apply to any insurance policy, endowment policy, annuity contract, optional annuity contract, or any contract or agree in relation to and in consequence of any such policy or contract, issued by an insurance company subject to the supervision or control of the Texas Department of Insurance when the form of such policy or contract has been duly filed with the Department as now or hereafter required by law.

TEX.CIV.STAT.ANN. art. 581-4(A)(Vernon Supp. 2007).

Certificate of deposit is not listed in the definition of a security. However, the Texas Business and Commerce Code provides this definition:

> 'Certificate of deposit' means an instrument containing an acknowledgment by a bank that a sum of money has been received by the bank and a promise by the bank to repay the sum of money. A certificate of deposit is a note of the bank.

TEX.BUS.&COM.CODE ANN. § 3.104(j)(Vernon Supp. 2007).

Whether an instrument is a security under the Texas statute is a matter of law and is determined *de novo*. *Campbell v. C.D. Payne and Geldermann Sec., Inc.*, 894 S.W.2d 411, 417-

18 (Tex.App.--Amarillo 1995, writ denied). Texas courts typically look to federal law to aid in determining whether an instrument is a security. *See Caldwell v. State*, 95 S.W.3d 563, 566 (Tex.App.--Houston [1st Dist.] 2002, pet. ref'd). The Supreme Court has noted that the term "security" embodies a flexible rather than a static principle. *Tcherepnin v. Knight*, 389 U.S. 332, 338, 88 S.Ct. 548, 554, 19 L.Ed.2d 564 (1967). Giving the definition of "security" a liberal reading, a certificate of deposit issued by a bank could be considered the equivalent of an "evidence of indebtedness" and would be a "security" within the meaning of the 1933 Act. *Superintendent of Ins. of State of N.Y. v. Bankers Life & Cas. Co.*, 300 F.Supp 1083, 1100 (S.D.N.Y. 1969), *aff'd*, 430 F.2d 355 (2d Cir. 1970), *rev'd on other grounds*, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). The Texas Securities Act like the 1933 Securities Act contains the language "evidence of indebtedness." TEX.CIV.STAT.ANN. art. 581-4(A). "Evidence of Indebtedness" is self-defining, requiring no further definition, which suggests a common understanding of the term. *Thomas v. State*, 65 S.W.3d 38, 42-3 (Tex.Crim.App. 2001).

In *Reves v. Ernst & Young*, the Supreme Court clarified the "family resemblance" test for determining whether a note is a security. *Reves v. Ernst & Young*, 494 U.S. 56, 110 S.Ct. 945, 108 L.Ed.2d 47 (1990). Since a certificate of deposit is defined as a note of the bank, we shall apply this test. The test begins with a presumption that every note is a security. *Reves*, 494 U.S. at 65, 110 S.Ct. at 951. However, there are notes that are not securities. *Id.* These notes are:

> [N]ote delivered in consumer financing, the note secured by a mortgage on a home, the short-term note secured by a lien on a small business or some of its assets, the note evidencing a 'character' loan to a bank customer, short-term notes secured by an assignment of accounts receivable, or a note which simply formalizes an open-account debt incurred in the ordinary course of business (particularly if, as in the case of the customer of a broker, it is collateralized).

-4-

*Reves*, 494 U.S. at 65, 110 S.Ct. at 951.

The presumption that a note is a security may be rebutted by showing the note in question bears a strong family resemblance to one of the notes listed as non-securities. *Reves*, 494 U.S. at 63-4, 110 S.Ct. at 950, *citing Exchange Nat. Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1137-38 (CA2 1976). One could also convince the court to add a new instrument to the list of non-securities. *Reves,* 494 U.S. at 64, 110 S.Ct. at 950. The first factor looked at in deciding whether a transaction involves a security is the motivation of the buyer and seller. *Id*. at 66, 110 S.Ct. at 951-52.

> If the seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments and the buyer is interested primarily in the profit the note is expected to generate, the instrument is likely to be a 'security.' If the note is exchanged to facilitate the purchase and sale of a minor asset or consumer good, to correct for the seller's cash-flow difficulties, or to advance some other commercial or consumer purpose, on the other hand, the note is less sensibly describes as a 'security.'

*Reves*, 494 U.S. at 66, 110 S.Ct. at 951-52.

The second factor looked at is the "plan of distribution" for the instrument, and whether there is common trading for speculation or investment. *Id*. The next factor to be considered is the reasonable expectations of the investing public, and the court will consider them to be securities based on those expectations even if an economic analysis suggests that the instruments are not securities as used in that transaction. *Id*. at 66, 110 S.Ct. at 952. Lastly, the court looks at whether the risk of the instrument has been significantly reduced by the presence of another factor such as a regulatory scheme, which would make the application of the Securities Act unnecessary. *Reves*, 494 U.S. at 67, 110 S.Ct. at 952.

In this case, the motivation of the purchasers of the CDs was the high interest rate, which

was better than what the banks were offering at the time for CDs. In the context of notes, profit means a valuable return on an investment, which would include interest. *Reves*, 494 U.S. at 68 n.4, 110 S.Ct. at 953 n.4. The stated purpose for the sale of CDs was to raise capital for Royal Zurich's participation in international financial market investments. Just as in *Reves*, the transaction is more properly described as an investment in a business enterprise rather than a purely commercial or consumer transaction. *Reves*, 494 U.S. at 68, 110 S.Ct. at 953. As to the plan of distribution, all that is required to establish common trading is that the instruments be offered and sold to a broad segment of the public. *Id*. In this case, the CDs were advertised in the *Dallas Morning News* for over the course of at least a year to the general public, many of whom contacted Appellant and purchased CDs. The public's reasonable perception shows that the CDs were considered to be investments. The purchasers testified they used CDs as investments. The question and answer sheet sent out by the bank, also characterized the CDs as investments. Finally, there were no other factors to significantly reduce the risk of the instrument, which would make the application of the Securities Act unnecessary. There is no regulatory scheme in place in Grenada for shell banks. There is no federal insurance available to the purchasers to protect their investment. Appellant intimated the CDs were backed by Lloyd's of London Insurance along with the question and answer sheet from Royal Zurich but they were not. The risk was held entirely by the purchasers of the CDs. This is the type of situation noted in *Marine Bank v. Weaver*, where a certificate of deposit could be a security since there is no federal regulation or backing such as the FDIC. *Marine Bank v. Weaver*, 455 U.S. 551, 556-561 n.11, 102 S.Ct. 1220, 1223-26 n.11, 71 L.Ed.2d 409 (1982). We find that the certificates of deposit in this case issued by an offshore, shell bank with no federal regulation and no insurance

are securities.  The trial court did not err in its finding.  We overrule Appellant's Issue One.

We affirm the judgment of the trial court.


May 1, 2008

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Carr, JJ.

(Do Not Publish)