COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




CAMERON O. BAILEY,


 Appellant,


v.



THE STATE OF TEXAS 


 
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-02-00424-CR



Appeal from the


283rd Judicial District Court


of Dallas County, Texas 


(TC# F-0200037-T)



O P I N I O N ON REMAND


 Cameron O. Bailey appeals his convictions for the fraudulent sale of securities with an
aggregated value of more than $100,000. (1) Appellant began working for Mr. Kloss at
Cornerstone Financial during 1998 in Dallas, Texas. In February of 1999, the Texas Securities
Board contacted Mr. Bailey about one of his products, American Benefits Services Viatical
contracts, informing him that he should not be selling the viaticals since they are securities, and
he was not registered to sell securities. In September of 1999, the Securities Board executed a
search warrant on Mr. Bailey's office seizing American Benefits material as well as other
products. The Securities Board did not send him a letter or written documentation that sale of
CDs would be consider to be the sale of securities.

 While employed at Cornerstone, he began offering Cambridge International Bank and
Trust Company Limited Certificates of Deposit. Cambridge is a wholly owned subsidiary of
Royal Trust and Bank of Zurich. Many of Mr. Bailey's clients testified they saw an
advertisement in the newspaper that offered a high fixed rate of return on insured certificate of
deposits (CDs), and met with Mr. Bailey for more information before eventually purchasing the
CDs. The testimony followed a similar pattern: Mr. Bailey would assure the client the CDs were
a safe investment and insured, the clients would purchase the CDs, and after receiving the initial
interest payments, they received nothing further.

 William Kerr, a national bank examiner with the Office of the Comptroller of the
Currency for the United States Treasury, testified as an expert for the State. Mr. Kerr stated an
offshore bank is an institution that is not permitted to operate in the country that issues its
charter. The banking laws and regulations for an offshore bank in Grenada requires one to fill
out an application, pay a filing fee, and pass a criminal background check. There is almost no
supervision of these banks in the country since they do not actually operate in the charter country. 
Grenada has no deposit insurance plan in place by the government of Grenada, and there have
been two bank failures in the past two years of Grenadian banks. There is no formal, enforced
regulatory scheme for an offshore bank such as Cambridge International Bank and Trust.

 The State also presented expert testimony by David Grauer, Director of the Enforcement
Division for the Texas Securities Board outside the presence of the jury. The parties in the case
agreed that the trial judge should make the decision of whether the CDs in the case were
securities. Mr. Grauer testified as to the definition of a security, the tests used in determining if
an instrument is a security, and that in his opinion these certificates of deposits were securities.

 The court found that the CDs in this case were securities. The jury found Mr. Bailey
guilty of selling securities without being a registered dealer. The court sentenced him to 8 years'
confinement, fined $5,000, and ordered to pay restitution. Appellant's sole issue on appeal is
whether the trial court erred in ruling as a matter of law that a certificate of deposit is a security.

 The Texas Securities Exchange Act defines a security as:

 The term 'security' or 'securities' shall include any limited partner interest
in a limited partnership, share, stock, treasury stock, stock certificate under a
voting trust agreement, collateral trust certificate, equipment trust certificate,
preorganization certificate or receipt, subscription or reorganization certificate,
note, bond, debenture, mortgage certificate or other evidence of indebtedness, any
form of commercial paper, certificate in or under a profit sharing or participation
agreement, certificate or any instrument representing any interest in or under an
oil, gas, or mining lease, fee or title, or any certificate or instrument representing
or secured by an interest in any or all of the capital, property, assets, profits or
earnings of any company, investment contract, or any other instrument commonly
known as a security, whether similar to those herein referred to or not. The term
applies regardless of whether the 'security' or 'securities' are evidence by a
written instrument. Provided, however, that this definition shall not apply to any
insurance policy, endowment policy, annuity contract, optional annuity contract,
or any contract or agree in relation to and in consequence of any such policy or
contract, issued by an insurance company subject to the supervision or control of
the Texas Department of Insurance when the form of such policy or contract has
been duly filed with the Department as now or hereafter required by law.


Tex.Civ.Stat.Ann. art. 581-4(A)(Vernon Supp. 2007).


 Certificate of deposit is not listed in the definition of a security. However, the Texas
Business and Commerce Code provides this definition:

 'Certificate of deposit' means an instrument containing an acknowledgment by a
bank that a sum of money has been received by the bank and a promise by the
bank to repay the sum of money. A certificate of deposit is a note of the bank.


Tex.Bus.&Com.Code Ann. § 3.104(j)(Vernon Supp. 2007).

 Whether an instrument is a security under the Texas statute is a matter of law and is
determined de novo. Campbell v. C.D. Payne and Geldermann Sec., Inc., 894 S.W.2d 411, 417-18 (Tex.App.--Amarillo 1995, writ denied). Texas courts typically look to federal law to aid in
determining whether an instrument is a security. See Caldwell v. State, 95 S.W.3d 563, 566
(Tex.App.--Houston [1st Dist.] 2002, pet. ref'd). The Supreme Court has noted that the term
"security" embodies a flexible rather than a static principle. Tcherepnin v. Knight, 389 U.S. 332,
338, 88 S.Ct. 548, 554, 19 L.Ed.2d 564 (1967). Giving the definition of "security" a liberal
reading, a certificate of deposit issued by a bank could be considered the equivalent of an
"evidence of indebtedness" and would be a "security" within the meaning of the 1933 Act. 
Superintendent of Ins. of State of N.Y. v. Bankers Life & Cas. Co., 300 F.Supp 1083, 1100
(S.D.N.Y. 1969), aff'd, 430 F.2d 355 (2d Cir. 1970), rev'd on other grounds, 404 U.S. 6, 92
S.Ct. 165, 30 L.Ed.2d 128 (1971). The Texas Securities Act like the 1933 Securities Act
contains the language "evidence of indebtedness." Tex.Civ.Stat.Ann. art. 581-4(A). 
"Evidence of Indebtedness" is self-defining, requiring no further definition, which suggests a
common understanding of the term. Thomas v. State, 65 S.W.3d 38, 42-3 (Tex.Crim.App. 2001).

 In Reves v. Ernst & Young, the Supreme Court clarified the "family resemblance" test for
determining whether a note is a security. Reves v. Ernst & Young, 494 U.S. 56, 110 S.Ct. 945,
108 L.Ed.2d 47 (1990). Since a certificate of deposit is defined as a note of the bank, we shall
apply this test. The test begins with a presumption that every note is a security. Reves, 494 U.S.
at 65, 110 S.Ct. at 951. However, there are notes that are not securities. Id. These notes are:

 [N]ote delivered in consumer financing, the note secured by a mortgage on a
home, the short-term note secured by a lien on a small business or some of its
assets, the note evidencing a 'character' loan to a bank customer, short-term notes
secured by an assignment of accounts receivable, or a note which simply
formalizes an open-account debt incurred in the ordinary course of business
(particularly if, as in the case of the customer of a broker, it is collateralized).


Reves, 494 U.S. at 65, 110 S.Ct. at 951.

 The presumption that a note is a security may be rebutted by showing the note in question
bears a strong family resemblance to one of the notes listed as non-securities. Reves, 494 U.S. at
63-4, 110 S.Ct. at 950, citing Exchange Nat. Bank of Chicago v. Touche Ross & Co., 544 F.2d
1126, 1137-38 (CA2 1976). One could also convince the court to add a new instrument to the
list of non-securities. Reves, 494 U.S. at 64, 110 S.Ct. at 950. The first factor looked at in
deciding whether a transaction involves a security is the motivation of the buyer and seller. Id. at
66, 110 S.Ct. at 951-52.

 If the seller's purpose is to raise money for the general use of a business enterprise
or to finance substantial investments and the buyer is interested primarily in the
profit the note is expected to generate, the instrument is likely to be a 'security.' 
If the note is exchanged to facilitate the purchase and sale of a minor asset or
consumer good, to correct for the seller's cash-flow difficulties, or to advance
some other commercial or consumer purpose, on the other hand, the note is less
sensibly describes as a 'security.'


Reves, 494 U.S. at 66, 110 S.Ct. at 951-52.


 The second factor looked at is the "plan of distribution" for the instrument, and whether
there is common trading for speculation or investment. Id. The next factor to be considered is
the reasonable expectations of the investing public, and the court will consider them to be
securities based on those expectations even if an economic analysis suggests that the instruments
are not securities as used in that transaction. Id. at 66, 110 S.Ct. at 952. Lastly, the court looks at
whether the risk of the instrument has been significantly reduced by the presence of another
factor such as a regulatory scheme, which would make the application of the Securities Act
unnecessary. Reves, 494 U.S. at 67, 110 S.Ct. at 952.

 In this case, the motivation of the purchasers of the CDs was the high interest rate, which
was better than what the banks were offering at the time for CDs. In the context of notes, profit
means a valuable return on an investment, which would include interest. Reves, 494 U.S. at 68
n.4, 110 S.Ct. at 953 n.4. The stated purpose for the sale of CDs was to raise capital for Royal
Zurich's participation in international financial market investments. Just as in Reves, the
transaction is more properly described as an investment in a business enterprise rather than a
purely commercial or consumer transaction. Reves, 494 U.S. at 68, 110 S.Ct. at 953. As to the
plan of distribution, all that is required to establish common trading is that the instruments be
offered and sold to a broad segment of the public. Id. In this case, the CDs were advertised in
the Dallas Morning News for over the course of at least a year to the general public, many of
whom contacted Appellant and purchased CDs. The public's reasonable perception shows that
the CDs were considered to be investments. The purchasers testified they used CDs as
investments. The question and answer sheet sent out by the bank, also characterized the CDs as
investments. Finally, there were no other factors to significantly reduce the risk of the
instrument, which would make the application of the Securities Act unnecessary. There is no
regulatory scheme in place in Grenada for shell banks. There is no federal insurance available to
the purchasers to protect their investment. Appellant intimated the CDs were backed by Lloyd's
of London Insurance along with the question and answer sheet from Royal Zurich but they were
not. The risk was held entirely by the purchasers of the CDs. This is the type of situation noted
in Marine Bank v. Weaver, where a certificate of deposit could be a security since there is no
federal regulation or backing such as the FDIC. Marine Bank v. Weaver, 455 U.S. 551, 556-561 
n.11, 102 S.Ct. 1220, 1223-26 n.11, 71 L.Ed.2d 409 (1982). We find that the certificates of
deposit in this case issued by an offshore, shell bank with no federal regulation and no insurance
are securities. The trial court did not err in its finding. We overrule Appellant's Issue One.

 We affirm the judgment of the trial court.



May 1, 2008

 DAVID WELLINGTON CHEW, Chief Justice


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)
1. This opinion is one of three near identical opinions. Appellant was convicted in cause
numbers F-0200019-T, F-0200035-T, and F-0200037-T with the sale of unregistered securities,
selling securities without being a registered dealer, and fraudulent sale of securities with an
aggregate value of more than $100,000.