# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

—————
### NO. 03-10-00639-CV
—————

**Trinity Settlement Services, LLC, Appellant**

**v.**

**The Texas State Securities Board and John Morgan, In His Official Capacity as Commissioner of the Texas State Securities Board[1], Appellees**

—————
**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT NO. D-1-GN-10-001534, HONORABLE LORA LIVINGSTON, JUDGE PRESIDING**
—————

## O P I N I O N

This is an appeal from a grant of a plea to the jurisdiction stemming from a dispute regarding the Texas State Securities Board's regulation of the sale of viatical settlements. Appellant Trinity Settlement Services, LLC (Trinity), an entity proposing to engage in the sale of viatical settlements, sued appellees the Texas State Securities Board (TSSB) and John Morgan, in his official capacity as Commissioner of the TSSB, to obtain a declaratory judgment (1) that the TSSB and Morgan acted without statutory authority in an enforcement action against another viatical-settlement provider, Retirement Value, LLC (RV) and (2) that certain investments Trinity itself proposes to sell, denominated "specified percentages of participations in the proceeds of life insurance policies,"

---

[1] The notice of appeal and prior filings in the district court reference the TSSB's former commissioner, Denise Voigt Crawford, who has since retired. Accordingly, the TSSB's current commissioner, John Morgan, has been substituted. *See* Tex. R. App. P. 7.2(a).

are not "securities" as defined by the Texas Securities Act (TSA). We affirm the trial court's order granting the plea to the jurisdiction, concluding Trinity failed to invoke the jurisdiction of the trial court under either (1) the Administrative Procedure Act (APA) section 2001.038 because it failed to challenge a rule of the TSSB, as defined by the APA, or (2) the Uniform Declaratory Judgments Act (UDJA) because it failed to plead a justiciable controversy.

## BACKGROUND

### A.    Viatical Settlements

A "viatical settlement" is a transaction in which an insured sells the benefits of his or her life insurance policy to a third party in return for a lump-sum cash payment equal to a percentage of the policy's value. *See Black's Law Dictionary* 1497 (9th ed. 2009); *Securities & Exch. Comm'n v. Mutual Benefits Corp.*, 408 F.3d 737, 738 (11th Cir. 2005). The purchaser of the viatical settlement realizes a profit if, when the insured dies, the policy benefits paid are greater than the purchasing price, adjusted for time value. *Mutual Benefits Corp.*, 408 F.3d at 738. Viatical-settlement providers—like Trinity—purchase policies from individual insureds and then typically sell fractionalized interests in these policies to investors. *Id.*

Viatical settlements may be subject to the requirements of the TSA if they constitute "securities" as defined by the Act. Tex. Rev. Civ. Stat. art. 581-4(A). The TSA's definition of "security" includes, in relevant part, "any . . . note . . . or other evidence of indebtedness . . . or any . . . investment contract" but excludes "any insurance policy . . . or any contract or agreement in relation to and in consequence of any such policy or contract, issued by an insurance company

2

subject to the supervision or control of the Texas Department of Insurance when the form of such policy or contract has been duly filed with the Department." *Id.* "The term 'security' has been defined broadly and encompasses unusual financial instruments as well as those commonly considered securities." *Caldwell v. State*, 95 S.W.3d 563, 566 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd); *see also Tcherepnin v. Knight*, 389 U.S. 332, 338 (1967) (noting term "security" should be viewed as embodying a flexible rather than static principle). Courts must analyze the specific facts surrounding an investment transaction to determine whether it falls within the definition of "security." *See, e.g.*, *Caldwell*, 95 S.W.3d at 566; *King Commodity Co. of Tex., Inc. v. State*, 508 S.W.2d 439, 442 (Tex. Civ. App.—Dallas 1974, no writ).

Whether a particular viatical settlement falls within the definition of a "security" may turn on a number of factors, including whether the investment may be characterized as a note, evidence of indebtedness, or investment contract and whether the investment is excluded from the definition of security because it is a contract or agreement in relation to and in consequence of a life insurance policy. *See, e.g.*, *Griffitts v. Life Partners, Inc.*, No. 10-01-00271-CV, 2004 WL 1178418, at *1 (Tex. App.—Waco May 26, 2004, no pet.) (mem. op.); *see also* Tex. Rev. Civ. Stat. art. 581-4(A). Even if a viatical settlement falls within the definition of a security, there are several exemptions from the TSA's registration requirements —including exemptions for private offerings and sales to accredited investors. *See* Tex. Rev. Civ. Stat. art. 581-5 (Exempt Transactions); 7 Tex. Admin. Code § 139.19 (2013) (TSSB, Accredited Investor Exemption).

Litigation involving the regulation of viatical settlements as securities, however, has largely turned on whether the investment at issue satisfied the requirements of an "investment

contract." *See*, *e.g*, *Mutual Benefits Corp.*, 408 F.3d at 743; *Griffitts*, 2004 WL 1178418, at *1–2; *see also* Michele Meyer McCarthy, Annotation, *State Regulation of Viatical Life Insurance Programs, Viatical Settlements, and Viatical Investments*, 28 A.L.R.6th 281 (2007). "The test" for whether an investment constitutes an investment contract "is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." *Searsy v. Commercial Trading Corp.*, 560 S.W.2d 637, 640 (Tex. 1977). The test, in turn, for whether profits "come solely from the efforts of others" is "whether the efforts made by those other than the investor are undeniably significant ones, those essential managerial efforts which affect the failing or success of the enterprise." *Id.* at 641.

In the context of viatical settlements, courts have found that whether a particular viatical settlement is an investment contract largely depends on whether the managerial efforts of a viatical-settlement provider affected the failure or success of the enterprise or whether the profitability of the enterprise is determined by the mortality of the insureds rather than the managerial efforts of the provider. *Compare Securities & Ex. Comm'n v. Life Partners, Inc.*, 87 F.3d 536, 542–548 (D.C. Cir. 1996); *Griffitts*, 2004 WL 1178418, at *2, *with Mutual Benefits Corp.*, 408 F.3d at 743–745. Thus, the particular business structure and managerial efforts of a viatical-settlement provider are critical in determining whether the provider is selling securities subject to regulation under the TSA. Determining who is buying the investments may also be critical, as sales to some investors may be exempt from the TSA's registration requirements. *See* Tex. Rev. Civ. Stat. art. 581-5; 7 Tex. Admin. Code §139.19.

4

**B.      RV Lawsuit**

On May 5, 2010, the State of Texas, through the Office of the Attorney General and at the request of the TSSB, filed suit against RV—a viatical-settlement provider—alleging several causes of action including the sale of unregistered securities in violation of the TSA. The Plaintiff's Original Verified Petition, verified by the Deputy Securities Commissioner, alleges that RV "offered for sale and sold investments in the death benefits of life insurance policies" as part of its "Re-Sale Life Insurance Policy Program." After providing a detailed recitation of the specific facts giving rise to the investment transactions in the Re-Sale Life Insurance Policy Program, the Petition alleges:

> The investments in the Re-Sale Life Insurance Policy Program are securities in the form of "investment contracts". . . . An application of [the definition of investment contract] to the investments in the Re-Sale Life Insurance Policy Program demonstrates that these investments are "investment contracts," and these instruments are therefore securities.

The Petition then asserts several causes of action against RV, including offering and selling unregistered securities in violation of the TSA.

**C.      Trinity's Lawsuit**

The present suit arises from Trinity—an entity not associated with RV—seeking a declaration under both the UDJA and APA that the TSSB and Morgan acted without authority in the RV suit in alleging that the investments in the Re-Sale Life Insurance Policy Program were securities subject to the TSA's requirements. With regard to its interest in the RV suit, Trinity alleges only that it "proposed to engage in the sale of specified percentages of participations in the proceeds of life insurance policies," and that "as a result of the TSSB's allegations that the investments in the

5

Re-Sale Life Insurance Policy Program are securities in the form of investment contracts, . . . Trinity has been forced to cease its own anticipated business operations and refuse any business from participants seeking to purchase a specified percentage in the proceeds of life insurance policies." Trinity additionally seeks a declaration that the sale of specified percentages of participations in the proceeds of life insurance policies does not constitute a security under the TSA, and consequently, Trinity is not required to register with the TSSB.

The appellees filed a plea to the jurisdiction alleging the trial court did not have subject-matter jurisdiction because Trinity's claims were not ripe for adjudication, sought an advisory opinion, and were barred by sovereign immunity. Trinity responded by contending the TSSB was engaging in improper ad-hoc rule-making against RV and other viatical-settlement providers. As evidence, Trinity attached a hearing transcript from an enforcement action brought by the TSSB against another viatical-settlement provider, AGAP Life Offering, LLC (AGAP). The trial court granted the plea to the jurisdiction and issued the following conclusions of law: (1) Trinity's claims are not ripe for adjudication and its suit seeks an impermissible advisory opinion, (2) Trinity's UDJA claims against the TSSB are barred by sovereign immunity, (3) Trinity's UDJA claims against the Commissioner in his official capacity fail because Trinity did not allege an ultra vires action, and (4) the APA does not confer jurisdiction under section 2001.038 because Trinity did not challenge a TSSB rule.

## STANDARD OF REVIEW

Subject-matter jurisdiction is essential to the authority of a court to decide a case. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 94 (Tex. 2012). A plea to the jurisdiction challenges the

6

trial court's authority to determine the subject matter of a specific cause of action. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 149 (Tex. 2012). The purpose of a plea "is not to force the plaintiff to preview their case on the merits but to establish a reason why the merits of the plaintiffs' claims should never be reached." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Because subject-matter jurisdiction presents a question of law, we review the district court's decision de novo. *Graber v. Fuqua*, 279 S.W.3d 608, 631 (Tex. 2009).

When we consider a trial court's order on a plea to the jurisdiction, we look to the "plaintiff's petition to determine whether the facts pled affirmatively demonstrate that jurisdiction exists." *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). The burden is on the plaintiff to affirmatively demonstrate the trial court's jurisdiction. *Heckman*, 369 S.W.3d at 137. In determining whether the plaintiff has met this burden, we construe the plaintiff's pleadings liberally, taking all factual assertions as true, and look to the plaintiff's intent. *Id.* "A court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555. Here, Trinity submitted as evidence the State's petition filed on behalf of the TSSB in the RV suit and a transcript from the TSSB's enforcement hearing against AGAP.

## DISCUSSION

### A. Subject-Matter Jurisdiction under the APA

In its first issue on appeal, Trinity argues that the trial court had jurisdiction over its claims against the TSSB under section 2001.038 of the APA. *See* Tex. Gov't Code § 2001.038.

7

The APA allows a party to bring a declaratory-judgment action against an agency to challenge the validity or applicability of an agency rule if it is alleged that the rule or its threatened application interferes with or impairs a legal right or privilege of the plaintiff. *Id.*; *see Texas Dep't. of Transp. v. Sunset Transp. Inc.*, 357 S.W.3d 691, 700 (Tex. App.—Austin 2011, no pet.). Section 2001.038 of the APA is considered a legislative grant of subject-matter jurisdiction, such that valid claims raised pursuant to its provisions are not barred by sovereign immunity. *See Combs v. Entertainment Publ'ns, Inc.*, 292 S.W.3d 712, 720 (Tex. App.—Austin 2009, no pet.); *Texas Dep't of Pub. Safety v. Salazar*, 304 S.W.3d 896, 903 (Tex. App.—Austin 2009, no pet.). If a party raises a valid rule challenge under the APA, the trial court's subject-matter jurisdiction is established. *See Combs*, 292 S.W.3d at 720. But a challenged agency action constituting a "rule"—as defined by the APA—must exist for a claimant to successfully invoke the trial court's subject-matter jurisdiction under section 2001.038. *See Slay v. Texas Comm'n on Envtl. Quality*, 351 S.W.3d 532, 545 (Tex. App.—Austin 2011, pet. denied). If there is not a "rule" as defined by the APA, the claimant cannot seek declaratory relief under section 2001.038, and sovereign immunity bars the cause of action. *Id.*

In this appeal, Trinity does not challenge an agency rule adopted by the TSSB through the formal rule-making procedures set forth in the APA. *See* Tex. Gov't Code § 2001.023–.034. Rather, Trinity argues that the TSSB's "publicly-announced interpretation of the TSA" in the RV suit is an ad hoc rule subject to challenge under the APA. "Ad hoc rulemaking occurs when the agency makes a determination that has implications beyond the instant parties but prefers not to make a formal rule because the agency may not have had sufficient experience with a particular problem to support making a rule or because the problem is so specialized and varying in nature as

8

to be impossible of capture within the boundaries of a general rule." *Centerpoint Energy Entex v. Railroad Comm'n of Tex.*, 213 S.W.3d 364, 369 (Tex. App.—Austin 2006, pet. dismissed). The TSSB, however, argues that statements made in its pleadings in the RV suit are not "rules" within the meaning of the APA, and therefore not subject to a challenge under section 2001.038. We agree with the TSSB.

To invoke the trial court's jurisdiction under the APA, Trinity had the burden of establishing that the TSSB's "publicly-announced interpretation of the TSA" in the RV suit was a "rule" as defined by the APA. *See* Tex. Gov't Code § 2001.038; *see also Slay*, 351 S.W.3d at 544–45. The APA defines a "rule" as a "state agency statement of general applicability" that "implements, interprets, or prescribes law or policy" or "describes the procedure or practice requirements of a state agency" but "does not include a statement regarding only the internal management or organization of a state agency and not affecting private rights or procedures." Tex. Gov't Code § 2001.003(6). But "[n]ot every administrative pronouncement is a rule within the meaning of the APA." *Salazar*, 304 S.W.3d at 906; *see Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 443 (Tex. 1994). "This observation refers to the fact that administrative agencies routinely issue letters, guidelines, and reports, and occasionally file briefs in court proceedings, any of which might contain statements that intrinsically implement, interpret, or prescribe law, policy or procedure or practice requirements," but not all such statements are "rules" within the meaning of the APA. *Brinkley v. Texas Lottery Comm'n*, 986 S.W.2d 764, 769 (Tex. App.—Austin 1999, no pet.) (also noting that an agency could not practically file a brief in court "if bound to express their views as to law, policy, and procedural requirements through contested-case decisions or formal rules exclusively").

9

In order to be considered a statement of "general applicability" under the APA, agency pronouncements must "affect the interest of the public at large such that they cannot be given the effect of law without public input." *El Paso Hosp. Dist. v. Texas Health & Human Servs. Comm'n*, 247 S.W.3d 709, 714 (Tex. 2008). Agency statements that "have no legal effect on private persons" are not considered rules. *Brinkley*, 986 S.W.2d at 770. When an agency adjudicates individual rights of parties through trial-type proceedings, the Texas Supreme Court has held that "statements made in determining individual rights, even if the number of individuals is large and they can be described as falling within a defined class" are not statements of general applicability. *Railroad Comm'n v. WBD Oil & Gas Co.*, 104 S.W.3d 69, 79 (Tex. 2003) (concluding field rules adopted through contested-case hearings "are not rules of general applicability which must not be made without public comment but are an adjudication of the individual interests principally affected"); *see also Combs*, 292 S.W.3d at 721 n.4 (observing that field rules at issue in *WBD Oil* were "promulgated through trial-type proceedings . . . that adjudicated the individual rights of the parties and could not, therefore, be challenged as generally applicable rules in a declaratory-judgment action under section 2001.038").

We conclude the TSSB's statements in the RV suit were limited solely to an adjudication of RV's individual rights under the TSA and are not statements of general applicability. *See WBD Oil & Gas Co.*, 104 S.W.3d at 79. The TSSB's petition in the RV suit specifically describes the business model and investment transactions of RV's Re-Sale Life Insurance Policy Program, analyzes the definition of "security" under the TSA, and concludes that the specific investments sold by RV were "securities" subject to regulation by the TSSB. But this statement

10

applies only to RV and is based on the specific transactions involved in the Re-Sale Life Insurance Policy Program.

Further, the TSSB did not express an intention in the RV suit to apply this interpretation of the TSA in all future cases involving the sale of viatical settlements, regardless of whether the particular factual circumstances of a transaction might result in a different treatment. *Compare Combs*, 292 S.W.3d at 722 (emphasizing legal interpretation in Comptroller's letter constituted a rule because it would bind agency employees and "unambiguously express[ed] an intent to apply this interpretation . . . in all future cases involving brochure-fundraising firms, regardless of whether the particular circumstances of each transaction might have resulted in a different tax treatment"); *El Paso Hosp. Dist.*, 247 S.W.3d at 714 (concluding HHSC's cutoff date for submitting paid claims to determine Medicaid reimbursement rates was a "statement of general applicability because it applies to all hospitals"); *see also Texas State Bd. of Pharmacy v. Witcher*, No. 03-12-00560-CV, 2013 WL 1876467, at *8 (Tex. App.—Austin May 3, 2013, no pet. h.) (motion for rehearing pending) (majority opinion concluding agency's reciprocal-sanctions policy met APA's definition of a "rule" because it was generally applicable to all pharmacists licensed in more than one state without regard to individual circumstances and Board intended "to apply the policy not just to Witcher but also prescriptively to others"). Rather, the TSSB's statements were made in seeking an adjudication only of RV's individual rights based on the specific investments they sold under their Re-Sale Life Insurance Policy Program and are not statements of generally applicability. *See WBD Oil & Gas Co.*, 104 S.W.3d at 79.

11

Further, the transcript from the TSSB's enforcement hearing against AGAP—another viatical-settlement provider—does not demonstrate that the TSSB has adopted an unwritten rule or policy of regulating all viatical settlements as securities without regard to individual circumstances. *See CenterPoint Energy*, 213 S.W.3d at 369 ("If the decision made during a ratemaking proceeding reflects a policy choice that has not been committed to a formal rule, it can be considered an ad hoc rulemaking."); *Witcher*, 2013 WL 1876467, at *8 (majority opinion concluding "a policy that establishes a bright-line rule that is applicable without regard to individual circumstances" met definition of "rule" under APA). Rather, the TSSB's representative at the hearing repeatedly testified that not all viatical settlements are securities, and under Texas law, the TSSB must analyze the specific facts of an investment transaction and apply such facts to the TSA's definition of "security" to determine whether an investment is a security subject to the TSSB's regulation. He further testified in great detail as to the specific facts of AGAP's investments—which differed from Trinity's—and applied these facts to the TSA's definition of security to conclude that AGAP's investments were securities subject to regulation. Because AGAP and RV had different factual circumstances, TSSB's legal theories and analysis in the two cases differed and neither case established a policy of regulating all viatical settlements without regard to individual circumstances.

Accordingly, we cannot conclude that Trinity has established that the TSSB's statements in the RV suit constituted a "rule" invoking the trial court's jurisdiction under the APA. We overrule Trinity's first issue on appeal.

## B.    Subject-Matter Jurisdiction under the UDJA

Having concluded that Trinity failed to invoke the jurisdiction of the trial court under the APA, we next consider whether the trial court had jurisdiction under the UDJA. *See* Tex. Civ.

Prac. & Rem. Code § 37.001–.011 (provisions of UDJA). Trinity sought two declarations under the UDJA: (1) a declaration that the appellees acted without statutory authority in the RV suit and (2) a declaration of its own rights and status under the TSA. Sovereign immunity bars both of Trinity's UDJA claims against the TSSB. *See Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011) ("[T]he UDJA does not waive the state's sovereign immunity when the plaintiff seeks a declaration of his or her rights under a statute."); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 (Tex. 2009) (suits seeking to restrain official conduct that is ultra vires of an agency's statutory or constitutional powers "cannot be brought against the state, which retains immunity, but must be brought against the state actors in their official capacity" because "acts of officials which are not lawfully authorized are not acts of the state"). With regard to Trinity's remaining claims against Morgan, we conclude Trinity failed to plead a justiciable controversy. For Trinity's first claim seeking a declaration that Morgan acted without statutory authority in the RV suit, we conclude Trinity is seeking an impermissible advisory opinion that will not resolve any controversy between the parties actually before the court. For Trinity's second claim seeking a declaration of its own rights and status under the TSA, we conclude that any controversy between the TSSB and Trinity at this time is based upon hypothetical facts that have not yet matured to a ripe controversy sufficient to confer jurisdiction on the trial court.[2]

---

[2] Because we conclude Trinity failed to plead a justiciable controversy, we do not reach the issue of whether they raised valid ultra vires claims. *See Texas Dep't of Pub. Safety v. Salazar*, 304 S.W.3d 896, 906 (Tex. App.—Austin 2009, no pet.) ("While private parties may seek declaratory relief in connection with an alleged ultra vires act, a declaratory judgment requires a justiciable controversy as to the rights and status of parties actually before the court for adjudication.").

*Declaration that Morgan Acted Without Statutory Authority in the RV Suit*

The UDJA is a remedial statute designed "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." Tex. Civ. Prac. & Rem. Code § 37.002(b). It provides in relevant part: "A person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or legal relations thereunder." *Id.* § 37.004(a). The UDJA, however, does not enlarge a trial court's jurisdiction; rather, a declaratory-judgment action is merely a procedural device for deciding matters already within a trial court's subject-matter jurisdiction. *Heinrich*, 284 S.W.3d at 370. "Subject matter jurisdiction requires that the party bringing the suit must have standing, that there be a live controversy between the parties, and the case must be justiciable." *Tex. Dep't of Banking v. Mount Olivet Cemetery Ass'n.*, 27 S.W.3d 276, 282 (Tex. App.—Austin 2000, pet. denied). Accordingly, to invoke the subject-matter jurisdiction of the court, a declaratory judgment action "requires a justiciable controversy as to the rights and status of the parties actually before the court for adjudication, and the declaration sought must actually resolve the controversy." *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163–64 (Tex. 2004). A justiciable controversy is one in which a real and substantial controversy exists involving a genuine conflict of tangible interest and not merely a theoretical dispute. *Texas Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 154 (Tex. App.—Austin 1998, no pet.). Jurisdiction under the UDJA therefore "primarily depends on the nature of the controversy; whether the controversy is merely hypothetical or rises to the justiciable level." *Id.* at 154.

14

We conclude Trinity is seeking an impermissible advisory opinion as the declaration it seeks—that the TSSB acted without statutory authority in the RV suit—would not bind the parties to the current litigation nor provide specific relief to Trinity. *See Brinkley*, 986 S.W.2d at 767 ("The distinctive feature of an advisory opinion is that it decides an abstract question of law without binding the parties."). Rather, Trinity is seeking a declaration of the rights and status of RV—a party who is not before the court and cannot invoke the jurisdiction of the trial court. *See Brook*s, 141 S.W.3d at 163–64 (concluding trial court does not have jurisdiction to declare rights and status of parties who are not before the court). To invoke the jurisdiction of the trial court, Trinity must allege a justiciable controversy "as to the rights and status of parties actually before the court for adjudication" that will be resolved by the declaration sought. *Id.* Further, a declaration that the TSSB acted without statutory authority in the RV suit would not resolve whether Trinity is subject to the requirements of the TSA. Rather, Trinity's right to proceed with its proposed sale of viatical settlements would remain speculative because it is a fact-based determination. *See* Tex. Civ. Prac. & Rem. Code § 37.008 (allowing trial court to refuse to render declaratory judgment if it would not end controversy or uncertainty giving rise to proceeding). Accordingly, we conclude Trinity seeks an impermissible advisory opinion that would not bind the parties before the court and failed to invoke the jurisdiction of the trial court under the UDJA.

### *Declaration of Trinity's Rights and Status under the TSA*

Trinity additionally seeks a declaration "that the sale of specified percentages of participations in the proceeds of life insurance policies does not constitute a security" under the TSA

15

and that "Trinity is consequently not required to register with the TSSB its participations as securities." In this claim, Trinity is not challenging a specific agency action nor the validity of an agency rule. *See City of Waco v. Texas Nat'l Res. Conservation Comm'n*, 83 S.W.3d 169, 178 (Tex. App.—Austin 2002, pet. denied)*.* Rather, Trinity seeks a declaration to clarify its own rights and status under the TSA. The UDJA grants any litigant whose rights are affected by a statute the opportunity to obtain a declaration of those rights under the statute. Tex. Civ. Prac. & Rem. Code § 37.004; *see also Texas Mun. Power Agency v. Public Util. Comm'n*, 100 S.W.3d 510, 515 (Tex. App.—Austin 2003, pet denied). A declaratory-judgment action does not, however, give a court "jurisdiction to pass upon hypothetical or contingent situations, or to determine questions not then essential to the decision of an actual controversy, although such actions may in the future require adjudication." *Bexar Metro. Water Dist. v. City of Bulverde*, 243 S.W.3d 126, 130–31 (Tex. App.—Austin 2007, no pet.). After careful review of the record, we conclude any controversy between the TSSB and Trinity at this time is based upon hypothetical facts that have not yet matured to a ripe controversy sufficient to confer jurisdiction on the trial court. While the TSSB raises several challenges to the trial court's jurisdiction, the ripeness issue is dispositive. *See Waco Indep. Sch. Dist v. Gibson.*, 22 S.W.3d 849, 851 (Tex. 2000).

Ripeness implicates subject-matter jurisdiction and asks whether—at the time a lawsuit is filed—the facts have developed sufficiently so that an injury has occurred or is likely to occur, rather than being contingent or remote. *Rea v. State*, 297 S.W.3d 379, 383 (Tex. App.—Austin 2009, no pet.). A case is not ripe when its resolution depends on contingent or hypothetical facts, or upon events that have not yet come to pass. *Patterson v. Planned Parenthood*

16

*of Houston*, 971 S.W.2d 439, 442 (Tex. 1998). A justiciable controversy, however, does not necessarily equate with a fully ripened cause of action. *Moore*, 985 S.W.2d at 153–54. Rather, an action for declaratory judgment will "lie when the fact situation manifests the presence of ripening seeds of a controversy," such that "the claims of several parties are present and indicative of threatened litigation in the immediate future which seems unavoidable, even though the differences between the parties as to their legal rights have not reached the state of an actual controversy." *Id.*; *see Save our Springs Alliance v. City of Austin*, 149 S.W.3d 674, 683 (Tex. App. Austin—2004, no pet.) The constitutional prohibition against issuing advisory opinions also has a pragmatic, prudential aspect that aims to conserve "judicial time and resources for real and current controversies, rather than abstract, hypothetical, or remote disputes." *Patterson*, 971 S.W.2d at 443 (quoting *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998)). In the administrative-law context, moreover, avoiding premature litigation over administrative determinations prevents courts from "entangling themselves in abstract disagreements over administrative policies" while simultaneously allowing the agency to perform its functions unimpeded. *Id.*

In determining whether a cause is ripe for judicial consideration, we look to whether the facts have sufficiently developed to show that an injury has occurred, or is likely to occur. *City of Waco*, 83 S.W.3d at 175. When a business—like Trinity— files a "pre-enforcement" suit seeking a declaration of its rights prior to an agency enforcement action, we have concluded the controversy is ripe for review only if "an enforcement action is imminent or sufficiently likely." *Atmos Energy Corp. v. Abbott*, 127 S.W.3d 852, 856 (Tex. App.—Austin 2004, no pet.); *see also Rea*, 297 S.W.3d at 383 ("To establish that a claim is ripe based on an injury that is *likely* to occur,

17

the plaintiff must demonstrate that the injury is imminent, direct, and immediate, and not merely remote, conjectural, or hypothetical."). In this case, the pleadings and evidence indicate the TSSB has taken no action against Trinity.[3] Although the TSSB has brought an enforcement action against other viatical- settlement providers, we cannot conclude that an enforcement action against Trinity is also imminent or sufficiently likely to occur at this time.

Rather, whether the TSSB will bring an enforcement action against Trinity depends on many factual contingencies that have not yet come to pass and are not before the court, including whether Trinity chooses to begin selling viatical settlements, how Trinity ultimately structures its investments, the managerial efforts Trinity exerts in such sales, what type of investors purchase the viatical settlements, and whether the TSSB elects to bring an enforcement action against Trinity based on these future actions. Trinity's claim does not pose a pure question of law but instead asks the trial court to engage in a fact-based determination based upon contingent, hypothetical facts. *See Beacon Nat'l Ins. Co. v. Montemayor*, 86 S.W.3d 260, 268 (Tex. App.—Austin 2002, no pet.) (concluding appellant's premature attempt to arrest the administrative process before the agency had taken an adverse action against it was not ripe when claim did not present pure question of law but required the determination of several factual matters that had not sufficiently developed); *see also Atmos*, 127 S.W.3d at 858 (concluding "issues raised by appellants were not fit for judicial review because whether appellants are subject to the Ceiling Price Statute is dependent on many

---

[3] Trinity pleads the TSSB sent its manager, Michael McDermott, correspondence in connection with the RV suit "alleging Mr. McDermott may have offered for sale and/or sold investments on behalf of RV." According to Trinity's pleadings, the TSSB letter was sent to Mr. McDermott because of his potential connection with the RV suit and not because of any action by Trinity or action by McDermott on Trinity's behalf.

18

facts not before the trial court"); *see also Patterson*, 971 S.W.2d at 443 ("Litigation based upon hypothetical possibility rather than concrete fact is apt to be poor litigation.").

Further, we cannot conclude that the TSSB's enforcement actions against other viatical-settlement providers demonstrates that an enforcement action against Trinity is also imminent at this time. Whether a particular viatical settlement is subject to the TSA is a fact-based determination contingent upon a number of factors, including whether the profitability of the enterprise is determined by the death of the insureds or the essential managerial efforts of the provider. *See Life Partners, Inc.*, 87 F.3d at 542–48; *Mutual Benefits Corp.*, 408 F.3d at 743–45; *Griffitts*, 2004 WL 1178418, at *2. Trinity pleaded that it "proposed to engage in the sale of viatical settlements" but did not plead that its investments or business would be structured identically to RV's or any other viatical-settlement provider the TSSB has previously instituted enforcement proceedings against.[4] Because Trinity's specific factual circumstances may differ from other viatical-settlement providers, we cannot conclude that an enforcement action against Trinity is imminent or sufficiently likely at this time. Accordingly, we conclude that Trinity's requested declaration of its rights and status under the TSA is not ripe for review and failed to invoke the trial court's jurisdiction under the UDJA because it is based on hypothetical facts. We further conclude that whether the TSSB will bring a future action is too speculative to support Trinity's contention that they are under an imminent threat of enforcement. *See Atmos*, 127 S.W.3d at 858.

---

[4] In its appellate brief, Trinity states that it did not intend to "suggest that Trinity's entire business model or systems and processes were going to be identical to those of RV."

**CONCLUSION**

Having determined Trinity's petition did not invoke the trial court's jurisdiction, we affirm the trial court's grant of the plea to the jurisdiction.[5]

_____

David Puryear

Before Justices Puryear, Pemberton, and Rose

Affirmed

Filed:   August 1, 2013

---

[5] The Texas Supreme Court has instructed us that if a claimant's pleadings omit sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of "pleading sufficiency, and the plaintiffs should be afforded the opportunity to amend." *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004). This is not such a case. Rather, we conclude the pleadings "affirmatively negate the existence of jurisdiction" and the "plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." *Id.*