Jerry Wayne **WIGFALL**, Appellant,

v.

## TEXAS DEPARTMENT OF CRIMINAL JUSTICE, Appellee.

### No. 01–02–01264–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 15, 2004.

that the trial court (1) abused its discretion in failing to sanction the TDCJ by excluding witnesses it designated 31 days before trial, and (2) erred in failing to appoint counsel to represent him. He further contends that the. jury's verdict is against the great weight and preponderance of the evidence. We conclude that Wigfall's contentions are without merit and, therefore affirm.

## Background

In April 1998, while incarcerated at the Holliday Unit in Walker County, Wigfall slipped and fell as he exited the shower. Wigfall sued the TDCJ, seeking personal injury damages he alleged were caused by his fall. In May 1999, Wigfall sent a Rule 194 request for disclosure to the TDCJ. The TDCJ responded, but indicated it would later supplement with regard to expert witnesses. The trial court dismissed the case on the pleadings, based upon Wigfall's failure to exhaust his administrative remedies. The Fourteenth Court of Appeals reversed the trial court's dismissal, holding that the TDCJ had waived the exhaustion requirement. *Wigfall v. Texas Dept. Of Criminal Justice*, No. 14–01–00260–CV, 2002 WL 245987 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (not designated for publication) (grievance procedure in Chapter 14 of the Civil Practice and Remedies Code waived).[1] The Fourteenth Court of Appeals issued its mandate July 19, 2002, and the Walker County District Clerk filed it in the trial court on July 23, 2002. The record contains neither a written notice from the trial court of the October trial setting, nor any amended docket control order. Nonetheless, on October 21, 2002, the trial court called the case to trial, and both parties announced ready.

Jerry Wigfall, Rosharon, pro se.

William Lance Cawthon, Assistant Attorney General, Susan Steff, Austin, TX, for Appellee.

Panel consists of Justices TAFT, KEYES, and BLAND.

## OPINION

JANE BLAND, Justice.

Appellant Jerry Wayne Wigfall slipped and fell while in the custody of appellee, the Texas Department of Criminal Justice ("TDCJ"). The jury exonerated the TDCJ from any premises liability connected with the fall. Wigfall appeals the trial court's judgment on the jury verdict, contending

---

1. *See also* TEX. CIV. PRAC. & REM.CODE ANN. § 14.005 (Vernon 2002) (providing inmate grievance procedure and requirement of exhaustion of administrative remedies).

During pre-trial proceedings, Wigfall asked the trial court to exclude the TDCJ's expert witnesses pursuant to Rule 193.5, contending that the TDCJ designated them within 30 days of trial. The trial court determined, however, that the TDCJ's designation occurred 31 days before trial, and Wigfall conceded as much on the record. The following exchange then happened:

[The Court]: And you're asking, among other things, about, if the experts will—

[Wigfall]: Yes, sir, I exclusively asked—on 5/19/99, I asked for disclosure of expert witnesses and discovery; and that was back in 1999.

[The Court]: There was a time limit on when they could advise you of that information?

[Wigfall]: Yes. The rule provides automatically that it's mandatory for scheduling for designated experts unless the Court orders to the contrary. That's what the rule says, that the party seeking affirmative relief designate 90 days before trial. All other parties must designate 60 days before the trial date. And defendants' counsel went way past the time limit to do this.

[The Court]: What does the State have to say about this?

[TDCJ]: Yes, Your Honor, this lawsuit was filed under the old rules, so the new rules don't apply. Under the old rules, all experts must be designated at least 30 days before the date of trial, which we did. They were designated as soon as we received the information from TDCJ as to who would testify.

[The Court]: Okay.

[TDCJ] At the time that he filed his initial request for interrogatories, we had no one to identify at that point. Once we found out this case was going to go to trial, we did timely designate our expert witnesses and provided him with that more than 30 days before trial, which is within the rules.

[The Court]: Okay, Mr. Wigfall, I take it that the thrust of your motion is to deny the State the evidence to be introduced by these experts because they weren't timely noticed?

[Wigfall]: Right.

[The Court]: But after hearing the arguments of counsel, I'm going to overrule that and allow them to go forward with their evidence, including experts, finding that under the old rules that the notice of their identity was disclosed within the time limits provided by the rules, okay?

[Wigfall]: Okay. And in reference to the expert list rule—or expert rule, there were some others, other than like the doctors and the other—there was other wardens and so forth—nurses and so forth that's being designated as expert witnesses. *And in actuality, they're not really expert witnesses because they're not really testifying as experts.*

(emphasis added). The case proceeded to trial. The jury unanimously found that the TDCJ was not negligent and wholly attributed the proximate cause of the occurrence in question to Wigfall's negligence. The trial court rendered a take-nothing judgment based on the jury's verdict.

### Expert Designation

Wigfall first contends that the trial court erred when in allowing witnesses to testify who the TDCJ designated as experts 31 days before trial, because its designation was not in accord with the schedule set forth in Rule 195.2 of the Texas Rules of Civil Procedure.

The TDCJ responds that the trial court did not err in admitting the testimony because its designation was timely pursuant to the rules governing discovery of

expert witnesses in effect when Wigfall filed suit. As an alternative basis for affirming the trial court's judgment, the TDCJ contends that any error in the admission of the disputed testimony is harmless.

■ Exclusion of a witness for a party's failure to timely or properly designate a witness is a sanction available to the trial court under Texas Rule of Civil Procedure 193.6. TEX.R. CIV. P. 193.6. We review the trial court's decision with regard to discovery matters for abuse of discretion. *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex.1986); *Helfand v. Coane*, 12 S.W.3d 152, 155 (Tex.App.-Houston [1st Dist.] 2000, pet. denied).

Current Rule 195.2(b) requires that a party not seeking affirmative relief—here the TDCJ—must designate testifying experts 60 days before the end of the discovery period. TEX.R. CIV. P. 195.2(b). The discovery period usually ends 30 days before trial. *See* TEX.R. CIV. P. 190.3. Thus, Rule 195.2(b) required the TDCJ to offer its designation 90 days before trial. The trial court never employed Rule 195.2, however, because it concluded that the new discovery rules did not apply to this case.

■ We disagree. In November 1998, the Texas Supreme Court ordered that the amendments to the Texas Rules of Civil Procedure apply in pending cases, including this one.[2] The trial court thus erred in applying the old discovery rules. Having determined that the amended discovery rules apply, however, we must decide whether the trial court's application of the earlier version of the discovery rules resulted in harmful error. TEX.R.APP. P. 44.1(a); *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 884 (Tex.2003). We conclude under these facts that it did not.

Rule 195.2 required the TDCJ to designate its experts 60 days before the end of the discovery period. Under the new rules, the discovery period in this case "ended" 30 days before trial. TEX.R. CIV. P. 190.3. Thus, the TDCJ should have designated its experts 90 days before trial. Application of Rule 195 was impracticable, however, because the appellate court did not issue its mandate until 95 days before trial, and the trial court clerk did not file it until 91 days before trial. There is no indication in the clerk's record of any notice of a trial setting after the appeal, and certainly no record of any notice sent in the one intervening day between receipt of the appellate court's mandate and the supplementation deadline contemplated in Rule 195.2(b). In circumstances such as these—in which the trial court dismissed

2. Paragraph 4(e) of the order provides in relevant part as follows:
 e. Rule 195 is effective January 1, 1999, except that: interrogatories that have been served but not answered as of that date and request information pertaining to experts should be answered; and the rule should not be applied to disrupt expert discovery that is in progress or impending; or that has been scheduled by order or by agreement of the parties; Order of Approval of the Revisions to the Texas Rules of Civil Procedure, Misc. Docket No. 98–9196 (Tex. Nov. 9, 1998), printed in 61 TEX. BAR J. 1140 (Dec.1998). The TDCJ relies upon paragraphs 4(e) and 5 of the Supreme Court's November 9, 1998 Order, to contend that applying the Rule 195 schedule for experts in this case would "disrupt expert discovery that is ongoing or impending." The TDCJ did not present this contention to the trial court. It instead took the position that the new rules were simply inapplicable to the case. Moreover, the TDCJ's own responses and supplements to written discovery belie its contention, for it filed notices of supplementation of witness designation in a manner that comports with the new discovery rules, and in response to Wigfall's requests for disclosure sent in May 1999, well after the January enactment of the new rules.

the case on the pleadings and an intervening appeal removed the case from the trial court's docket—notice of a new trial setting and a modified discovery control plan was warranted, but did not occur. *See* Tex.R. Civ. P. 190.5(b). Thus, the schedule set forth in Rule 195.2(b) was never triggered.

In the absence of a Rule 195.2(b) schedule under the new rules, supplementation must be made "reasonably promptly after the party discovers the necessity for such a response." Tex.R. Civ. P. 193.5(b). The rule further provides that "it is presumed that an amended or supplemental response made less than 30 days before trial was not made reasonably promptly." *See* Tex.R. Civ. P. 193.5(b). In this case, it is undisputed that TDCJ made its disclosures 31 days before trial, outside the "unsafe" harbor provided for in Rule 193.5(b). The issue, therefore, turns on whether the TDCJ's supplementation 31 days before trial was reasonably prompt.[3]

■ Such an analysis is the same under the old and new rules. *See Snider v. Stanley*, 44 S.W.3d 713 (Tex.App.-Beaumont 2001, pet. denied).[4] Before the amendments to the discovery rules, the rules of civil procedure provided that supplementation of expert discovery was to occur "as soon as is practical, but in no event less than thirty (30) days prior to the beginning of trial except on leave of court." *See State Farm Fire & Cas. Co. v. Morua*, 979 S.W.2d 616, 617 (Tex.1998) (quoting

former Rule 166(b)(6)). The party seeking exclusion of evidence bore the burden as to whether the expert designation was made "as soon as practical." *Mentis v. Barnard*, 870 S.W.2d 14, 16 (Tex.1994). *See also Snider*, 44 S.W.3d at 715–16. Thus, under both the old and the new rules, if the supplemental response is made more than 30 days before trial, the presumption of automatic exclusion does not exist. *See Mentis*, 870 S.W.2d at 16; *see also Snider*, 44 S.W.3d at 715 (any additional presumption would have been incorporated into Rule 193.5).

Because the TDCJ's second supplemental response was not *presumed* untimely, both the old and the new rules required the trial court to find that the TDCJ failed to supplement its response reasonably promptly. *See Snider*, 44 S.W.3d at 716. During the pre-trial conference, Wigfall noted that his requests for disclosure had been outstanding for some time, as he had propounded them before the trial court's earlier dismissal, and before the case was on appeal. The TDCJ explained, however, that at the time Wigfall propounded his request, "we had no one to identify at that point," but that "once we found out this case was going to go to trial, we did timely designate our expert witnesses." The record supports this statement, as the case had been remanded from the appellate court and re-docketed in the trial court 91 days earlier, and apparently no new docket

**3.** Once a trial court determines that the supplementation was not made "reasonably promptly" or, alternatively, the supplementation was made within 30 days of trial and is thus presumed to be untimely, Rule 193.6(b) places the burden of establishing good cause for the failure to supplement on the party seeking to introduce the evidence or call the witness. *See* Tex.R. Civ. P. 193.6.

**4.** In *Snider*, the Stanleys filed suit before the effective date of the new rules. In January

1999, after the effective date, the Stanleys served a request for disclosure pursuant to Rule 194. *Id.* Snider did not serve his expert response until 30 days before trial. The Beaumont Court of Appeals held that, outside the 30 day unsafe harbor, the burden of showing that supplementation was not reasonably prompt is upon the party seeking exclusion of the evidence—the same under the old rules and new rules. *Id.*

control order, nor any written notice of a trial setting had issued. Moreover, the TDCJ had supplemented its discovery more than 30 days before trial. The trial court had discretion to determine whether TDCJ supplemented its discovery responses in a reasonably prompt manner, both before and after the amendments to the rules of civil procedure, and the record provides some support for the TDCJ's explanation. The trial court's denial of Wigfall's request for automatic exclusion thus did not amount to an abuse of discretion. *See id.* As the old and the new rules apply similarly to the facts of this case, Wigfall cannot show that the trial court's reliance on the old rules was harmful error.

Moreover, Wigfall provided no argument or evidence to show that the TDCJ's delay rendered him unable to prepare for trial. *See Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 850 (Tex.1992) (determination of whether sanction is just involves contemplation of whether party moving for sanctions is unable to prepare for trial without the requested discovery). He did not request a continuance, nor did he contend that the TDCJ's delay left him unable to conduct his own discovery. Wigfall has not identified any evidence tendered in the TDCJ's second supplemental response to his request for disclosure that caused him to suffer surprise or prejudice at trial, plus he noted that at least some of the witnesses were "not really expert witnesses because they're not really testifying as experts." We cannot detect such prejudice, because none of the discovery responses at issue are included in the appellate record. We therefore hold that the trial court did not abuse its discretion in overruling Wigfall's request to sanction TDCJ by exclud-

ing its expert witness pursuant to Rule 193.6.

### Appointment of Counsel

█ Wigfall contends that the trial court erred in refusing to appoint counsel to represent him. We review the trial court's refusal to appoint trial counsel in a civil case for abuse of discretion. *Gibson v. Tolbert,* 102 S.W.3d 710, 712 (Tex.2003). The Texas Supreme Court has "never held that a civil litigant must be represented by counsel in order for a court to carry on its essential, constitutional function." *Travelers Indem. Co. v. Mayfield,* 923 S.W.2d 590, 594 (Tex.1996). The Texas Supreme Court has suggested, however, that in "exceptional circumstances," a trial court could appoint counsel to an indigent civil litigant. *Id.* In evaluating what might constitute exceptional circumstances, we are to consider the "unique circumstances" of the case and determine whether the trial court had "no reasonable alternative but to appoint counsel." *Tolbert,* 102 S.W.3d at 713.

Wigfall contends that the following circumstances demonstrate that the trial court abused its discretion: (1) Wigfall is indigent and therefore without funds to retain counsel; (2) the trial court gave no reason for its denial of his motion for appointment of counsel; (3) Wigfall desired to perform "a great deal of testing" on TDCJ's evidence, and could not afford such testing; (4) Wigfall's unfamiliarity with legal proceedings prevented him from obtaining a motion in limine to prevent the TDCJ from referring to pre-existing medical injuries he contends were irrelevant; (5) four TDCJ employees sat on the jury;[5]

---

5. During voir dire, Wigfall made a brief statement to the venire panel regarding his background, and the incident that gave rise to his claim. The trial court asked Wigfall whether he desired to determine if any panel members worked in the field of law enforcement. Wigfall responded, "No, sir, it don't make a difference."

and (6) Wigfall was unable to submit appropriate instructions, definitions, and questions for the court's charge.

The Supreme Court addressed inmate litigation in *Tolbert*, and noted that inmate suits against prison personnel are quite common. The Texas Legislature enacted Chapter 14 of the Civil Practice and Remedies Code "in an effort to curb this particular area of litigation excess." *Tolbert*, 102 S.W.3d at 713 (Tex.2003).[6] The Court described Tolbert's medical malpractice claim as an "obvious example" of a case that does not warrant the appointment of counsel. *Id.* The obstacles that confronted Tolbert are similar to those that confronted Wigfall. Both are indigent, lack legal skill and training, and desire expert testimony to refute the defendant's defensive theory and evidence. *See id.* at 711–12.

 Following *Tolbert*, we conclude that Wigfall's circumstances do not warrant appointed counsel. *See id.* In *Tolbert*, the Texas Supreme Court reasoned that plaintiffs lacking financial resources routinely obtain legal representation through contingent fee contracts, and recognized that as long as his claims were meritorious, Tolbert's indigence should not have prevented him from obtaining legal counsel. *Id.* at 713. Wigfall is similarly situated. Moreover, though Wigfall lacks formal legal training, he appears to have practical experience in civil proceedings before Texas courts, and succeeded in reversing the trial court's dismissal of this case. *See In re Wigfall*, No. 14–03–00702–CV, 2003 WL 21511289 (Tex.App.-Houston [14th Dist.]

July 3, 2003, no pet.) (not designated for publication); *see also In re Wigfall*, No. 04–01–00410–CV, 2001 WL 855448 (Tex. App.-San Antonio July 31, 2001, no pet.) (not designated for publication). The trial court thus did not abuse its discretion when it refused to appoint counsel for Wigfall.

## Appellate Review of the Evidence

### Standard of Review

Wigfall attacks an adverse jury finding on an issue for which he bears the burden of proof. He thus must demonstrate that the evidence conclusively establishes, as a matter of law, all facts in support of the issue (for rendition), or alternatively, that the jury's adverse finding is against the great weight and preponderance of the evidence (for remand). *Vickery v. Vickery*, 999 S.W.2d 342, 375 (Tex.1999); *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex. 1982). In reviewing a claim that the evidence conclusively establishes liability as a matter of law, we consider evidence and inferences supporting the jury's finding, and ignore all evidence and inferences to the contrary. *Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 458 (1992); *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989). In reviewing a claim that the verdict is against the great weight and preponderance of the evidence, we consider and weigh all of the evidence, and may set aside the verdict only if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709

---

6. Wigfall failed to comply with Chapter 14, which required that he file a grievance with the TDCJ pursuant to Section 14.005 of the Civil Practice and Remedies Code, and wait for a written decision from the grievance system. *See Wigfall v. Texas Dept. Of Criminal Justice*, No. 14–01–00260–CV, 2002 WL 245987 (Tex.App.-Houston [14th Dist.] Feb. 21, 2002, no pet.) (not designated for publica-

tion). Wigfall marked his own form "denied," filed his grievance with the TDCJ, and instituted the instant case later that day. *Id.* These events formed the basis of the trial court's initial dismissal of this case. The TDCJ, however, expressly had waived the grievance procedure, and thus the Fourteenth Court of Appeals reversed the dismissal and remanded the case.

S.W.2d 175, 176 (Tex.1986). The jury may believe one witness and disbelieve another, and it may resolve inconsistencies in any testimony. *Eberle v. Adams,* 73 S.W.3d 322, 327 (Tex.App.-Houston [1st Dist.] 2001, pet. denied).

*Premises Liability*

The Texas Legislature has waived the State's sovereign immunity for injuries caused by a condition of real property owned by a governmental entity if the governmental entity would, were it a private person, be liable under Texas law. TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1997); *City of Grapevine v. Roberts,* 946 S.W.2d 841, 843 (Tex. 1997). Under the Texas Tort Claims Act (TTCA), the governmental entity's standard of care depends upon whether the claim arises from an ordinary premise defect or a special defect. TEX. CIV. PRAC. & REM.CODE ANN. § 101.022 (Vernon 1997); *Roberts,* 946 S.W.2d at 843.

■ If a "special defect" creates an injury causing condition, the governmental entity owes a claimant the same duty that a private landowner owes an invitee. *Roberts,* 946 S.W.2d at 843. If an ordinary premise defect causes an injury, the governmental entity owes the claimant the same duty that a private landowner owes a licensee. TEX. CIV. PRAC. & REM.CODE ANN. § 101.022; *Roberts,* 946 S.W.2d at 843. The duty that a licensor owes to a licensee for an alleged premises defect is to not injure the licensee by willful, wanton, or grossly negligent conduct. *Wal–Mart Stores, Inc. v. Miller,* 102 S.W.3d 706, 709 (Tex.2003). If the licensor has knowledge of a dangerous condition, and the licensee does not, the licensor must either warn of the dangerous condition or make the condition reasonably safe. *Id.*

■ Numerous courts have determined that a slippery floor condition constitutes an ordinary premise defect. *See, e.g., State v. Tennison,* 509 S.W.2d 560, 562 (Tex.1974) (slippery floor held to be premise defect); *Blankenship v. County of Galveston,* 775 S.W.2d 439, 440 (Tex.App.-Houston [1st Dist.] 1989, no writ) (slippery algae growth on stairs of Galveston seawall held to be a premise defect and not special defect). We hold that Wigfall's claim concerns an ordinary premise defect. *Roberts,* 946 S.W.2d at 843.

· ■ To prevail on his premises liability claim under a licensee theory, Wigfall had to prove the following: (1) a condition on the premises created an unreasonable risk of harm to Wigfall; (2) the TDCJ actually knew of the condition; (3) Wigfall did not know of the condition; (4) the TDCJ failed to exercise ordinary care to protect Wigfall from danger by both failing to adequately warn Wigfall of the danger and failing to make the condition reasonably safe; and (5) the TDCJ's failure proximately caused Wigfall's injury. *State v. Williams,* 940 S.W.2d 583, 584 (Tex.1996).

■ With respect to gross negligence, Wigfall testified that the shower design requires inmates to climb into the stalls, and that no "hand railing or gripping" existed in the shower stall in which he fell. Wigfall further testified that the TDCJ issued a work order "to re-coat all the shower area floors that had went [sic] unnoticed until I filed a claim." Further evidence demonstrates, however, that Wigfall was aware of the condition of the shower stall immediately before he slipped and fell. He testified that before he entered the shower, "a few people had already been in the shower before me, and I had waited my turn." Wigfall introduced a photograph of the location where he fell which, he explained, depicted a water stain on the floor caused by water standing "at all times that we're using these showers." Wigfall admitted that he had taken over

140 showers at the Holliday unit, had slipped before, and "was aware that I had to be careful each and every time I entered and exited the showers." Wigfall was also aware that other inmates have slipped and fallen at the exact location where he fell. Wigfall explained that "soap build-up" from other inmates using the showers causes the floor to become slippery, and he fell as he exited the shower.

With respect to Wigfall's injuries, Dr. Glenda Adams, TDCJ's Eastern Regional Medical Director, testified that she reviewed Wigfall's medical records regarding his slip and fall, and opined that "while Mr. Wigfall probably does have some of the symptoms that he's claiming, it is in no way related to any type of slip-and-fall on the date in question. . . ." His examination shortly after the fall revealed "no injuries whatsoever." After Wigfall received treatment immediately following the incident, he did not complain again of the injury until 45 days had elapsed. X-rays of Wigfall's back did not indicate that he suffered any type of injury. Adams classified Wigfall's ability to bend and squat as "normal," and testified that he was able to lie on his back, straighten his legs, and lift them from the ground. Had Wigfall suffered a neck or back injury from his slip-and-fall, Adams would not have expected Wigfall to be able to perform these tasks in a "normal" fashion.

We conclude that there is evidence to support the jury's finding that Wigfall did not sustain injury proximately caused by the TDCJ's negligence, and that the evidence is not so weak that the jury's verdict is clearly wrong and unjust. *See Bain*, 709 S.W.2d at 176. Wigfall presented evidence that is inconsistent with the jury's finding, but the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Jones v. Tarrant Util. Co.*, 638 S.W.2d 862, 866 (Tex.1982). The trier of fact may resolve conflicts and inconsistencies in the testimony of any one witness as well as the conflicting testimony of different witnesses. *Webb v. Jorns*, 488 S.W.2d 407, 411 (Tex. 1972). Because we conclude that the evidence supports the jury's findings, we overrule Wigfall's challenges to the sufficiency of the evidence. *See Prime Products, Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 635 (Tex.App.-Houston [1st Dist.] 2002, pet. denied).

### Conclusion

We conclude that the trial court did not abuse its discretion with regard to pretrial discovery matters, and did not err in refusing to appoint counsel. We further conclude that the jury's verdict is not against the great weight and preponderance of the evidence. We therefore affirm the judgment of the trial court.