

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-16-00072-CV

_____


HIGH MOUNTAIN RANCH GROUP, LLC, ET AL., Appellants

V.

ELBERT L. NIECE, ET AL., Appellees


On Appeal from the 98th District Court
Travis County, Texas
Trial Court No. D-1-GN-15-001451


Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Moseley

OPINION

High Mountain Ranch Group, LLP (High Mountain), filed a petition for declaratory judgment against Elbert L. Niece, GT Land LP (GT Land), Mary Hernandez,[1] and the Estate of Manuel Saucedo, Sr. (Saucedo), among others,[2] seeking a judgment determining that the Declaration of Covenants and Restrictions (DCRs) on Lot 34 in Austin's Glenbrook Addition[3] is illegal, void, and/or unenforceable, and alternatively, seeking a modification of the DCRs to remove the residential use restrictions and subdivision set back requirements from the lot.[4] The trial court entered a final judgment after having granted various summary judgment motions filed on behalf of certain appellees. Ultimately, the trial court concluded that there was no justiciable case or controversy before it and, therefore, concluded that it did not have jurisdiction to consider the issues set out in High Mountain's pleadings. The trial court awarded attorney fees to Niece, GT Land, Hernandez, and Saucedo, and dismissed High Mountain's claims and causes of action with prejudice. Because (1) the trial court was not presented with a justiciable controversy and

---

[1]Hernandez is among a group of appellees, including Armandina Amezquita, Jose A. Alayon, Mauricio Sanchez Castro, Gilberto Sanchez de la Rosa, Jorge Garza, Sylvia Garza, Juan Hernandez, Albert Homann, John Mendoza, Mary Mendoza, Alfredo Ramirez, Rudolph Rios, May Josephine Torres, Harold Whitehead, Janies Whitehead, Adrian Zamarippa, and Stephen Zamarippa.

[2]High Mountain non-suited a number of defendants during the course of the trial court proceedings.

[3]Originally appealed to the Third Court of Appeals in Austin, this case was transferred to this Court by the Texas Supreme Court pursuant to Section 73.001 of the Texas Government Code. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Third Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[4]High Mountain also sought to recover attorney fees.

(2) the trial court acted within its discretion in the award of attorney fees, we affirm the trial court's judgment.

## I.        Factual and Procedural Background

High Mountain owns[5] two adjacent lots in the Glendale subdivision.[6]  The first lot fronts Highway 71 and is zoned commercial.  The second lot—Lot 34—is also zoned commercial[7] and fronts Meldrum Road.  Lot 34 is subject to certain DCRs restricting it to residential use and also imposing certain setback restrictions, which High Mountain claims prevent it from using or selling the property.  After unsuccessfully attempting to gain sufficient signatures on a petition circulated among the property owners in Glenbrook subdivision[8] (Chapter 201 Petition) which, if successful, would have relieved Lot 34 of the residential use restrictions, High Mountain filed a declaratory judgment lawsuit[9] asking the trial court to determine that the DCRs to which Lot 34 is subject are invalid, illegal, void and/or unenforceable, and alternatively seeking a modification of the DCR's so that they do not apply to Lot 34.

---

[5]Lot 34 was acquired by Alva and Cherry Hyde in August 1986.  For estate purposes, Alva and Cherry transferred the property into a family trust and then into High Mountain Ranch LP, which is managed by High Mountain Ranch Group, LLC.  High Mountain Ranch Group, LLC, is managed by the General Mangers, Cherry Hyde and her son, Steven Hyde.

[6]Austin's Glendale subdivision was formed in 1948 and straddles the north side of Highway 71, 1.1 miles from Austin-Bergstrom Airport.  The subdivision contains ninety lots, eighty of which are subject to the DCRs.

[7]In May 2002, the City of Austin granted a request for commercial zoning of Lot 34.

[8]The petition to modify deed restrictions was brought in accord with Chapter 201 of the Texas Property Code.  *See* TEX. PROP. CODE ANN. §§ 201.001–.013 (West 2014).

[9]Niece contends that High Mountain brought its suit only against those lot owners who did not sign the petition.

High Mountain filed a motion for summary judgment, a second amended motion for summary judgment, and a supplement to its second amended motion for summary judgment. Other defendants, including Hernandez, filed a motion for summary judgment and severance, GT Land filed a cross-motion for summary judgment, various defendants filed responses to High Mountain's summary judgment motions, Niece filed a motion for attorney fees, and Saucedo filed a motion for payment of attorney fees. The trial court concluded that there was no justiciable case or controversy before it, and, therefore, determined that it lacked jurisdiction to consider the issues set out in High Mountain's pleadings. The trial court granted (1) the request for attorney fees set forth in the Hernandez motion for summary judgment in the amount of $26,580.00, (2) the request for attorney fees set forth in GT Land's cross-motion for summary judgment in the amount of $23,750.00, (3) Niece's request for attorney fees in the amount of $30,000.00, and (4) Saucedo's request for attorney fees in the amount of $10,875.00.[10] The trial court denied High Mountain's request for an award of attorney fees and dismissed High Mountain's claims and causes of action with prejudice.

## II. The Declaratory Judgment Action Did Not Present a Justiciable Controversy

The question before us is whether High Mountain's lawsuit seeking a declaration that Lot 34 is not subject to the DCRs presented the trial court with a justiciable controversy.[11] Because

---

[10]Saucedo did not file an appellate brief.

[11]High Mountain contends that because the Travis County records include only a transcription of the original DCR, the original DCR is unenforceable and void. This contention is based on the assumption that the original DCR was not properly executed or notarized, and the apparent fact that the original DCR was not recorded. High Mountain further contends that even if the original DCR is valid, it does not apply, originally or as modified, to Lot 34 due to lack of proper notice and lack of privity of estate. Finally, High Mountain states that due to radical changes in the character of the neighborhood, including the conversion of neighboring lots to commercial use, construction of Austin-

4

ripeness, or justiciability, is an element of subject matter jurisdiction, it is a legal question subject to de novo review. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998); *Save Our Springs Alliance v. City of Austin*, 149 S.W.3d 674, 680 (Tex. App.—Austin 2004, no pet.).

High Mountain has unsuccessfully attempted to sell Lot 34 together with its adjoining, unrestricted parcel. Its inability to sell the property, it contends, is due to the residential use and setback restrictions to which Lot 34 is subject. High Mountain thus claims that unless Lot 34 is exempted from these restrictions, it will be unable to sell the property for its true value, or for any value whatsoever. It further claims that there has been and continues to be a justiciable controversy which began when High Mountain initiated the Chapter 201 petition process and the appellees either failed to respond or objected to the removal of the restrictions.

Niece, GT Land, and Hernandez contend, however, that the issue of the DCRs' applicability to Lot 34 is not ripe for determination, as High Mountain has not taken any action in violation of the DCRs. They point out that Lot 34 is and has been, at all relevant times, vacant property with no specified future use.[12] They further dispute High Mountain's claim that the appellees objected to the removal of the DCRs in response to the Chapter 201 Petition.

The Uniform Declaratory Judgment Act (UDJA) is a remedial statute which permits a person to petition the court for a declaration of rights under a written instrument. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (West 2015). The UDJA does not, however, expand the scope of the trial court's jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440,

---

Bergstrom International Airport and the expansion of Highway 71, Lot 34 is essentially unsuitable for residential access to Highway 71.

[12]Stephen Hyde filed an affidavit in the trial court stating, "I have not built on Lot 34 in violation of the restriction."

5

444 (Tex. 1993); *City of Austin v. Whittington*, 385 S.W.3d 28, 33 (Tex. App.—Austin 2007, no pet.). Consequently, "[a] declaratory judgment requires a justiciable controversy as to the rights and status of [the] parties . . . and the declaration sought must actually resolve the controversy." *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163–64 (Tex. 2004). "A justiciable controversy is one in which a real and substantial controversy exists involving a genuine conflict of tangible interests and not merely a theoretical dispute." *Tex. Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 153 (Tex. App.—Austin 1998, no pet.).

"Ripeness 'is a threshold issue that implicates subject matter jurisdiction . . . [and] emphasizes the need for a concrete injury for a justiciable claim to be presented.'" *Robinson v. Parker*, 353 S.W.3d 753, 755 (Tex. 2011) (quoting *Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998) ("The constitutional roots of justiciability doctrines such as ripeness, as well as standing and mootness, lie in the prohibition on advisory opinions, which in turn stems from the separation of powers doctrine.")). To determine whether a claim is ripe, we consider "whether, at the time a lawsuit is filed, the facts are sufficiently developed 'so that an injury has occurred or is likely to occur, rather than being contingent or remote.'" *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 852 (Tex. 2000) (quoting *Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998)). "A case is not ripe when determining whether the plaintiff has a concrete injury depends on contingent or hypothetical facts, or upon events that have not yet come to pass." *Id.*; *see Camarena v. Tex. Emp't Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988) (trial court cannot grant relief based on "a hypothetical situation which might or might not arise at a later date").

6

Although a fully ripened cause of action may not be necessary for a justiciable controversy to exist, the maintenance of an action for declaratory judgment requires a "'fact situation [which] manifests the presence of ripening seeds of a controversy,' such that 'the claims of several parties are present and indicative of threatened litigation in the immediate future which seems unavoidable, even though the differences between the parties as to their legal rights have not reached the state of an actual controversy.'" *Trinity Settlement Servs., LLC*, 417 S.W.3d 494, 506 (Tex. App.—Austin 2013, pet. denied) (quoting *Moore*, 985 S.W.2d at 154). Consequently, "A claimant is not required to show that the injury has already occurred, provided the injury is imminent or sufficiently likely." *City of Waco v. Tex. Natural Res. Conservation Comm'n*, 83 S.W.3d 169, 175 (Tex. App.—Austin 2002, pet. denied) (citing *Gibson*, 22 S.W.3d at 852).

Nothing in the record before us reveals any indication of threatened litigation in the immediate future which seems unavoidable. There is no evidence that High Mountain wishes to construct a commercial venture on Lot 34, that such a venture has been proposed to the subdivision lot owners, and that, as a result, litigation looms in the immediate future.[13] In fact, "the distinctive

---

[13]Hernandez' amended motion for partial summary judgment states, in part, that

> [t]he neighborhood may be perfectly content with whatever is planned to be developed on Lot 34 *in futuro* when the owner of Lot 34 makes known its intentions. Either Plaintiff or a future owner may break ground and develop something which may or may not violate the deed restrictions and no member of the neighborhood objects or files suit to enjoin the project. A future owner, like Plaintiff, may recirculate a petition with a specific project in mind and seek a relaxation of the deed restriction based upon the plan of development and tapered thereto.

Further, at the hearing on the motion to enter attorney fees, counsel for Niece stated,

> [Niece's] property value would be greatly diminished if some offensive use is put next door. And when we couldn't even ever get an answer out of them as to what they wanted to do, it put us in an untenable position where my client would have to spend a lot of money for something that quite frankly they might have wanted to be next door.

feature of an advisory opinion is that it decides an abstract question of law without binding the parties." *Boorhem-Fields, Inc. v. Burlington N. R.R. Co.*, 884 S.W.2d 530, 539 (Tex. App.—Texarkana 1994, no pet.). Whether the DCRs are binding on Lot 34 is just such an abstract question, as there is currently no claim that those restrictions have been violated.

High Mountain, however, relies on *Jones v. Young*, 541 S.W.2d 200 (Tex. App.—Houston [14th Dist.] 1976, no writ), in support of its claim that it is entitled to a judicial declaration that the DCRs do not apply to Lot 34. We disagree. *Jones* involved a declaratory judgment action by a property owner seeking to have certain restrictive covenants declared inapplicable to his property, claiming that the restrictions would interfere with his complete use and enjoyment of the property. *Id*. at 200–01. The trial court sustained the jurisdictional pleas and dismissed the suit. *Id*. at 201. Although the appellate court acknowledged, without elaboration, that the case presented a justiciable controversy, its reversal of the trial court's dismissal order was based on the determination that the plaintiff's pleadings failed to state a cause of action and dismissal was premature because the plaintiff was "precluded opportunity to amend his pleadings once the trial court had granted the motion for summary judgment." *Id*.

We, therefore, do not read *Jones* as standing for the proposition that a declaratory judgment action is an appropriate means for seeking a determination of the validity, applicability, or

---

> If it was some sort of place where his workers could run over and get something to eat, they may have welcomed it. But you don't know. And the fact that we wouldn't -- we can't find out, meant that this had to be dealt with, and dealt with quickly and effectively, and that's what we tried to do.

GT Land informed High Mountain, after filing its original answer, that it might be willing to stipulate non-opposition to the declaratory relief sought in exchange for High Mountain's agreement to reimburse GT Land for its attorney fees. High Mountain rejected this proposal.

enforceability of deed restrictions, in the absence of a justiciable controversy. And, while it is true in this case that potential purchasers may well be concerned that Glenbrook property owners may choose to pursue enforcement of the DCRs if a commercial venture is established on Lot 34, such speculation by a potential purchaser does not create a justiciable controversy between High Mountain and the Glenbrook subdivision property owners.[14] *See Trinity Settlement Servs., LLC,* 417 S.W.3d at 506.

High Mountain further contends that its efforts to successfully gain sufficient signatures on the Chapter 201 Petition and the Glenbrook lot owners' objections to the removal of the restrictions created a controversy which has now fully ripened. This contention is without support. Chapter 201 does not require a property owner to take any action whatsoever in response to a request to sign such a petition.[15] *See generally* TEX. PROP. CODE ANN. §§ 201.001–.013. And, from a purely factual standpoint, nothing in the record indicates that the appellee property owners objected to the removal of the DCRs. Indeed, High Mountain's first supplement to its second amended motion for summary judgment indicates the opposite:

> During the Chapter 201 process, the Plaintiff expended in excess of $4,000. This cost was solely the Plaintiff's expense and the Plaintiff does not seek reimbursement for this activity. Each property owner was asked only to get a petition signature page notarized. Since all major banks offer free notary service, no property owner was required to expend any money.

---

[14]Indeed, the record indicates that twenty of the eighty DCR-restricted properties are in violation of the DCRs. According to Steven Hyde, no enforcement activity has ever been undertaken to impose the restrictions on violators.

[15]A Chapter 201 petition must include the "original acknowledged signatures of the required number of owners as provided by Section 201.006." TEX. PROP. CODE ANN. § 201.007(a)(6).

> No defendant gave any reason nor raised any objection to the petition prior to the filing of the lawsuit.

There is no evidence in the record that Glenbrook property owners who failed to provide High Mountain with a notarized signature page for the petition did so because they were opposed to the removal of Lot 34's DCRs. Even according to High Mountain, there were no objections to the petition prior to the filing of the lawsuit. The mere failure to participate in a Chapter 201 petition is not evidence of a justiciable controversy or of "ripening seeds of a controversy, such that . . . claims are present and indicative of threatened litigation in the immediate future which seems unavoidable . . . ." *Trinity Settlement Servs., LLC*, 417 S.W.3d at 506.

Finally, to the extent High Mountain contends that opposition to its declaratory judgment lawsuit creates a justiciable controversy, we reject this contention. A justiciable controversy must exist at every stage of a lawsuit. *See Coburn v. Moreland*, 433 S.W.3d 809, 825 (Tex. App.—Austin 2014, no pet.). Because High Mountain's declaratory judgment action did not present a justiciable controversy, we affirm the trial court's judgment dismissing High Mountain's declaratory action.[16]

---

[16]Because we determine that no justiciable controversy exists, the trial court correctly dismissed High Mountain's claims. We, therefore, need not address High Mountain's substantive arguments regarding the denial of its motion for summary judgment. We likewise do not address High Mountain's affirmative claim in its reply brief that we must disregard Niece's appellate arguments based on the claim that Niece has since sold his lots in the Glenbrook addition and that GT Land has waived its arguments against removing the deed restrictions. *See* TEX. R. APP. P. 38.1. We also note that the appendix to High Mountain's reply brief consists of documents which do not appear in the appellate record. Documents attached as appendices to briefs, but not appearing in the appellate record, do not constitute part of the record of the case and cannot be considered on appeal. *See* TEX. R. APP. P. 34.1 (describing contents of appellate record); *Banks v. Bank of Am., N.A.*, No. 03-16-00046-CV, 2017 WL 1832489, at *3 n.5 (Tex. App.—Austin May 4, 2017, no pet. h.).

### III. Attorney Fees

Turning next to the trial court's various attorney fee awards, we examine the issue of whether the trial court erred in awarding appellees' attorney fees in the face of High Mountain's claim that attorney fee experts were not timely designated.[17]

On June 28, 2016, the trial court heard various summary judgment motions. In its cross-motion for summary judgment, GT Land sought recovery of its attorney fees, and Hernandez sought recovery of attorney fees in its motion for summary judgment. On August 15, 2016, the trial court heard the motions for payment of attorney fees filed by Niece and Saucedo, respectively. Attorney fees were awarded to each of the appellees as set out previously in this opinion.[18] Prior to the August 15 hearing, High Mountain filed a response opposing attorney fees as to all appellees claiming that since appellees failed to timely disclose their attorney fee experts, it would be unreasonable, unjust, and inequitable to award the requested fees.

A party must furnish testifying expert information requested under Rule 194.2(f), with regard to all experts testifying for a party seeking affirmative relief, by the later of two dates:

---

[17]High Mountain also claims that the award of attorney fees to Niece should not stand in light of High Mountain's claim that Niece has acted with unclean hands. High Mountain's brief cites no legal authority, record citations, or argument to support this contention. Therefore, this issue presents nothing for our review. *See* TEX. R. APP. P. 33.1; *Gen. Serv. Comm'n v. Little-Tex. Insulation Co.*, 39 S.W.3d 591, 598 n.1 (Tex. 2001) (appellant's failure to brief, or to adequately brief, an issue on appeal waives that issue).

[18]"Under section 37.009, a trial court may exercise its discretion to award attorneys' fees to the prevailing party, the nonprevailing party, or neither." *City of New Braunfels v. Carowest Land, Ltd.*, No. 03-16-00249-CV, 2017 WL 2857142, at *11 (Tex. App.—Austin June 29, 2017, no pet. h.) (quoting *Feldman v. KPMG LLP*, 438 S.W.3d 678, 685 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2015) ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just."). Attorney fees may be awarded under the UDJA even when the claim is dismissed for lack of jurisdiction. *Carowest*, 2017 WL 2857142 at *11. We review an award of attorney fees under the UDJA for abuse of discretion. *See Bocquet v. Herring*, 972 S.W.2d 19, 20–21 (Tex. 1998).

thirty days after the request is served or ninety days before the end of the discovery period. TEX. R. CIV. P. 195.2. Rule 193.6(a) provides that "[a] party who fails to make, amend, or supplement a discovery response in a timely manner . . . may not offer the testimony of a witness . . . who was not timely identified" unless there was "good cause for the failure to timely make . . . the discovery response" or the timely failure to respond does not "unfairly surprise or unfairly prejudice the other parties." TEX. R. CIV. P. 193.6(a). "The burden of establishing good cause or lack of unfair surprise is on the party seeking to introduce the evidence or call the witness," and such a finding must be supported by the record. TEX. R. CIV. P. 193.6(b). It is within the trial court's discretion to determine whether the offering party has met the burden of showing good cause or lack of unfair surprise or prejudice. *Aluminum Co. of Am. v. Bullock*, 870 S.W.2d 2, 3 (Tex. 1994).

### A. Niece Attorney Fee Claim

Niece sought recovery of attorney fees pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. At the fee hearing, High Mountain claimed that Niece was not entitled to recover its attorney fees in light of its late-designated attorney fee expert, and specifically complained that Niece failed to outline a monetary figure for attorney fees. High Mountain argued that Niece did not identify its attorney fee expert until August 2, 2016, after the trial court ruled that High Mountain did not present a justiciable controversy.[19] Niece claimed, as he does on appeal, that High Mountain was not unfairly surprised,

---

[19]Niece's supplemental response to plaintiff's requests for disclosure listed Don H. Magee as Niece's attorney fee expert. The supplemental response stated,

> Mr. Magee will testify as to the reasonableness and necessity of the fees incurred by Defendant Elbert L. Niece. Mr. Magee is anticipated to testify that the fees that have been incurred to date and that will be incurred by Mr. Niece are reasonable and necessary, particularly in light of Niece's

in light of the fact that Niece had requested recovery of attorney fees from the time he filed his original answer,[20] and in light of the fact that his disclosure stated that "redacted copies of invoices [were] available for review and inspection should Plaintiff wish to review them." High Mountain did not ask to review the attorney fee invoices.[21]

Where a party's pleadings contained the request for attorney fees from the lawsuit's inception and the court, to cure any alleged surprise, offered a postponement of testimony to permit discovery of the attorney fee expert before a hearing on the application for attorney fees, our sister court determined that there was a lack of unfair surprise or prejudice. *Beard Family P'ship v. Commercial Indem. Ins. Co.*, 116 S.W.3d 839, 850 (Tex. App.—Austin 2003, no pet.). In *Rhey v. Redic*, the El Paso Court of Appeals held it not an abuse of discretion for the trial court to overrule an objection to an untimely attorney fee expert designation where the opponent of the evidence

---

interest in the subject matter of the litigation. Mr. Magee will also likely testify that the fees that may be incurred in the event of an appeal will be reasonable and necessary as well.

The basis for the opinions expressed by Mr. Magee will be primarily his familiarity with the file and the work that has been performed by lawyers and legal assistants here at the firm. His opinions are also based on his education, training and experience handling similar litigation in Travis County, Texas, and the Central Texas area for over 30 years, and take into consideration the factors set forth in Tex. Disc. R. Prof. Cond. § 1.04(b)(1)–(8) and in *Arthur Anderson & Co. v. Perry Equipment Corp.*, 845 S.W.2d 812 (Tex. 1997). He will testify that the hourly rates of the professionals are reasonable, in light of their experience and expertise, and that the time expended defending the claims asserted against Mr. Niece was appropriate and reasonable under the circumstances.

[20]Niece further claimed that High Mountain Ranch Group, LLC, a management company that does not own the property, served the only request for disclosure. High Mountain, LP—the owner of the property—did not serve disclosure requests. At the fee hearing, the trial court mistakenly indicated that High Mountain Ranch Group, LLC, was an entity without standing and that such entity was dismissed. High Mountain pointed out that this party was not dismissed from the lawsuit.

[21]Magee testified at the fee hearing that reasonable and necessary fees incurred in Niece's representation were $95,000.00. Magee explained that the claims asserted in the third amended petition were based on entirely new theories, necessitating new investigation and significant time to research.

was on notice of the request for attorney fees because the request was contained in the original petition, which was filed just five months before trial and the attorney fee expert had been disclosed thirty-one days before the trial commenced. *See Rhey v. Redic*, 408 S.W.3d 440, 459 (Tex. App.—El Paso 2013, no pet.).

Here, we cannot conclude that the trial court abused its discretion in permitting Magee to testify regarding reasonable and necessary attorney fees incurred on behalf of Niece. Niece had specifically requested an award of attorney fees from the time he filed his original answer on May 1, 2015, well over a year in advance of the fee hearing. On June 22, 2015, Niece filed a special exception to the original petition for declaratory judgment in which he sought dismissal of the declaratory judgment claim and requested that the case be retained on the docket solely for the limited purpose of hearing each of the defendants' claims for costs and attorney fees in connection with "Plaintiffs [sic] improper declaratory judgment action." Although Niece offered to provide fee invoices to High Mountain when it supplemented its response to High Mountain Ranch Group, LLC's, request for disclosure, High Mountain did not request copies of those invoices.[22] At the fee hearing, Niece agreed to a delay or continuance so that High Mountain could depose Magee, if it wished to do so. High Mountain showed no indication that it wished to put the matter off.[23] This chronology of events reflects a lack of unfair surprise or prejudice and falls within the scope of our sister court's ruling in *Beard Family Partnership*. Under these circumstances, we hold that

---

[22]The owner of Lot 34—High Mountain Ranch, LP—did not serve requests for disclosure on any of the appellees.

[23]Although Magee testified at the fee hearing that attorney fees incurred totaled in excess of $90,000.00, the trial court only awarded Niece $30,000.00 in attorney fees.

14

the trial court did not abuse its discretion by impliedly finding that High Mountain was not unfairly surprised or prejudiced by the late disclosure.

## B.      Saucedo Attorney Fee Claim

On June 15, 2015, well over a year before the attorney fee hearing, the heirs of Manuel Saucedo filed their original answer together with the first amended answer of Patricia and Miguel Saucedo.  That answer specifically requested an award of attorney fees pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code.  On July 29, 2016, Saucedo filed a motion for payment of attorney fees, requesting fees in the amount of $10, 940.74, plus contingent appellate attorney fee awards.  Saucedo's attorney, Charles Smaistrla, attached his affidavit to the motion in support of the fee claim[24] as well as a "project invoice" for work performed on the case together with The State Bar of Texas Department of Research & Analysis 2013 Hourly Fact Sheet.  The invoice reflects a total of $10,940.74 in fees and expenses through July 1, 2016.  On August 2, 2016, Smaistrla designated himself as an attorney fee expert on behalf of Saucedo.  The designation indicated that Smaistrla would opine that "the fees that [had] been incurred to date and that [would] be incurred by Saucedo Heirs [were] reasonable and necessary, particularly in light

---

[24]Smaistrla's affidavit, which is quite extensive, recites, in part, "[The] Saucedo Heirs have not opposed the plaintiff's attempts to change the deed restrictions and attempted to settle this lawsuit with Plainitff with each side bearing its own costs.  Plaintiff refused to settle on those terms, insisting that the Saucedo Heirs bear a proportionate share of Plaintiff's alleged attorney's fees."  The affidavit further recites that Smaistrla has spent 43.5 hours on behalf of the Suacedo Heirs, that that work was reasonable and necessary, and that it is just and equitable that Plaintiff be ordered to pay for that work at Smaistrla's usual and customary rate of $250.00 an hour.

of the Heirs' interest in the subject matter of the litigation."[25]  At the fee hearing, Smaistrla testified that the reasonable and necessary fees incurred on behalf of Saucedo were $10,875.00.

Like Niece, Saucedo's pleadings included a request for the recovery of attorney fees from the inception of the lawsuit.  Saudcedo's motion for payment of attorney fees included an extensive affidavit by Smaistrla, together with a project invoice and 2013 hourly fact sheet.  That motion, together with attachments, provided High Mountain with all of the information covered by Rule 194.2(f).  *See* TEX. R. CIV. P. 194.2(f).  In light of the early notice given to High Mountain that it would press a claim for attorney fees, and in light of the disclosure provided over two weeks in advance of the hearing, together with the formal response to High Mountain's Rule 194.2 request for disclosure on August 2, 2016, it is reasonable to conclude that High Mountain was not unfairly surprised or prejudiced by Smaistrla's testimony at the August 15, 2016, fee hearing.  The trial court acted within its discretion to permit this testimony.  *See Beard Family P'ship*, 116 S.W.3d at 850; *Wigfall v. Tex. Dep't of Criminal Justice*, 137 S.W.3d 268, 274 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (holding that trial court did not abuse its discretion in not excluding late-designated expert witness where party who sought exclusion did not request continuance or complain that delay left him unable to conduct his own discovery).

### C.    GT Land and Hernandez Attorney Fee Claims

On appeal, High Mountain argues that "none of the . . . Appellees designated their attorney fee experts until well after the due date . . . [and] none should be entitled to recover attorneys' fees

---

[25]The designation also sets forth the basis for Smaistrla's opinions much like that basis statement provided in the Niece attorney fee expert designation.

16

in this case." At the attorney fee hearing, however, High Mountain told the trial court, "We're not trying to get the Court to change its ruling today on the attorney's fees that have been granted." High Mountain further clarified, "What we are seeking is the objection to the late filing of an expert witness by Saucedo and Niece."[26]

We find that any complaint High Mountain may have had regarding attorney fee awards to GT Land and Hernandez has not been preserved for appellate review. *See* TEX. R. APP. P. 33.1 (explaining that to preserve complaint for appellate review, record must show complaint was made to trial court).

## IV.    Conclusion

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:      July 3, 2017
Date Decided:        August 4, 2017

---

[26]The summary judgment hearing was conducted on June 28, 2016. At that time, the trial court granted Hernandez' motion for summary judgment and GT Land's cross-motion for summary judgment as to their respective requests for attorney fee awards, as these amounts were proved up via summary judgment evidence.