# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00276-CV

**Texas State Library and Archives Commission, Appellant**

**v.**

**Corey Westmoreland, Appellee**

### FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-21-001381, THE HONORABLE MADELEINE CONNOR, JUDGE PRESIDING

## O P I N I O N

This appeal arises out of a lawsuit filed by Texas State Library and Archives Commission (the Commission), which sought to recover an alleged state record in the possession of appellee Corey Westmoreland pursuant to Chapter 441 of the Texas Government Code. *See* Tex. Gov't Code § 441.192 (authorizing state agency to recover state records in private possession). Westmoreland asserted several counterclaims, including claims under the Takings Clauses of the United States and Texas Constitutions. The Commission filed a plea to the jurisdiction as to Westmoreland's counterclaims, and the trial court subsequently granted that plea in part and denied in part. The Commission now appeals the partial denial. For the following reasons, we reverse the trial court's partial denial and render judgment granting the plea as to Westmoreland's remaining counterclaims.

## BACKGROUND

Corey Westmoreland currently possesses an alleged Republic of Texas-era letter, written from David Burnet to Thomas Toby, dated September 23, 1836 (the "Letter"). On or around May 29, 2020, Corey Westmoreland emailed the Commission inquiring whether the Commission was interested in purchasing the Letter. In response, the State Archivist at the Commission stated that the Letter was part of a chain of historical communications involving state officials and that the Letter was a state record that had been unlawfully removed from the State's possession and must be returned to the Commission. The Commission sent several additional communications and demands for the Letter, but Westmoreland failed to respond.

On March 29, 2021, the Commission filed a lawsuit against Westmoreland to recover the Letter, asserting a cause of action to recover a state record and seeking attorney's fees under Section 441.192 of the Texas Government Code. *See* Tex. Gov't Code § 441.192 (authorizing state agency to recover state records in private possession). Westmoreland filed a general denial and brought counterclaims against the Commission, asserting (1) alleged violations of the Takings Clauses of the United States and Texas Constitutions; (2) alleged violations of Chapter 21 of the Texas Property Code; (3) alleged failures to comply with Section 441.192(a) of the Texas Government Code; (4) unjust enrichment; and (5) claims under the state and federal Uniform Declaratory Judgment Acts (UDJA).[1] The Commission then filed its own plea to the jurisdiction as to Westmoreland's counterclaims, contending, among other things, that the counterclaims were barred by sovereign immunity.

---

[1] Westmoreland does not explicitly assert unjust enrichment or UDJA causes of action as counterclaims within his pleading, but he does not dispute, either below or on appeal, the Commission's interpretation of his pleadings as implicitly asserting such claims.

The trial court heard the plea to the jurisdiction on February 17, 2022, and took the matter under advisement at the end of the hearing.  On April 25, 2022, the trial court signed an order on the plea to the jurisdiction, granting in part and dismissing Westmoreland's counterclaim under Chapter 21 of the Texas Property Code but denying the plea as to Westmoreland's other counterclaims.  The Commission then timely appealed that partial denial.[2]

## STANDARD OF REVIEW

A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of the causes of action.  *See Texas Dep't of Criminal Justice v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020).  Whether a trial court has subject matter jurisdiction is a question of law we review de novo.  *Texas Nat. Res. Conserv. Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).  We construe the pleadings liberally, looking to the pleader's intent, to determine whether the party resisting the plea has affirmatively demonstrated the trial court's jurisdiction.  *See Trinity Settlement Servs., LLC v. Texas State Sec. Bd.*, 417 S.W.3d 494, 500 (Tex. App.—Austin 2013, pet. denied); *see also State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007).

## RECOVERY OF STATE RECORDS

The Commission is required by statute to "take custody of, preserve, and make available for public use state records and other historical resources that document the history and culture of Texas as a province, colony, republic, or state."  Tex. Gov't Code § 441.006(a)(8).  "State records" include "any written, photographic, machine-readable, or other recorded

---

[2] The trial court proceedings were automatically stayed when the Commission appealed the interlocutory order.  *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) (authorizing appeals from grants or denials of jurisdictional pleas by governmental units), (b) (staying all trial court proceedings pending resolution of interlocutory appeal).

information created or received by or on behalf of a state agency or an elected state official that documents activities in the conduct of state business or use of public resources." *Id.* § 441.180(11). That includes "any recorded information created or received by a Texas government official in the conduct of official business, including officials from periods in which Texas was a province, colony, republic, or state," *id.*, and the Legislature expressly provided that this "appl[ies] retroactively and appl[ies] to all state records regardless of when the records were removed from the custody of this state." Act of May 21, 2009, 81st Leg., R.S., ch. 983, § 27, 2009 Tex. Gen. Laws 2577, 2583. Any state record "may not be sold or donated, loaned, transferred, or otherwise passed out of the custody of the state by a state agency without the consent of the director and librarian." Tex. Gov't Code § 441.191(a).

The Commission is empowered by statute to "demand the return of any state record in the private possession of a person if the removal of the state record from the state agency or the agency's predecessor was not authorized by law." *Id.* § 441.192(a); *see also id.* § 441.192(b) (authorizing director or librarian to demand return of state record in private possession of any person). If the private party refuses to deliver the alleged state record upon demand, the Commission may ask the Attorney General to "petition a district court in Travis County for the recovery of the record." *Id.* § 441.192(c). The trial court determines whether the document "is a state record or archival state record," and if the document is determined to be a state record, the trial court is required to "order the return of the record to the custody of the state." *Id.*[3]

---

[3] The Attorney General may also recover attorney's fees and court costs if a state record is successfully recovered through such a lawsuit. *See* Tex. Gov't Code § 441.192(e).

**DISCUSSION**

On appeal, the Commission challenges the denial of its plea to the jurisdiction as to Westmoreland's takings counterclaims, his unjust enrichment claim, and his claims under the state and federal Uniform Declaratory Judgment Acts. We address each in turn.

*Takings counterclaims*

The Commission argues that Westmoreland cannot bring takings counterclaims premised under either the Texas or United States Constitution because those counterclaims are barred by sovereign immunity. Westmoreland responds that the Commission has clouded his ownership of the Letter by filing the present lawsuit and therefore he has viable constitutional counterclaims. We agree with the Commission.

The Texas Constitution provides that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." Texas Const. art. I, § 17(a); *see also* U.S. Const. amend. V ("[N]or shall private property be taken for public use, without just compensation."). Although sovereign immunity generally deprives a trial court of jurisdiction over a lawsuit against a state agency, "[s]overeign immunity does not shield the State from claims based on unconstitutional takings of property." *Texas Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388, 390 (Tex. 2011); *see also Horne v. Dep't of Agric.*, 576 U.S. 350, 358 (2015) ("Nothing in the text or history of the Takings Clause, or our precedents, suggests that the rule is any different when it comes to appropriation of personal property."). "Whether the government's actions are sufficient to constitute a taking is a question of law." *Sawyer Trust*, 354 S.W.3d at 390.

5

The property in question here is the Letter, written in 1836 from David Burnet, the President of the Republic of Texas, to Thomas Toby. Thomas Toby was appointed in 1836 as the agent of the President of the Republic of Texas for the purposes of issuing "scrips" up to the amount of five hundred thousand acres of land. *See* Joint Resolution Authorizing the President to Issue Scrip up to the Amount of Five Hundred Thousand Acres of Land, approved Dec. 10, 1836, 1st Cong., R.S., §§ 1–2, 1838 Repub. Tex. Laws 1, 76-77, *reprinted in* 1 H.P.N. Gammel, *The Laws of Texas 1822-1897*, at 1136–37 (Austin, Gammel Book Co. 1898) (authorizing Texas president "to sign land scrip" of the specified amount, "transmit the same to Thomas Toby of New Orleans, for the purpose of being sold," and requiring Toby "to fulfil[l] all legal obligations into which he may have entered as agent of this government, on the faith of the authority given him by the president 'ad interim,' for the selling of land scrip"); *see also Land Scrip*, Black's Law Dictionary (11th ed. 2019) (defining "land scrip" as "[a] negotiable instrument entitling the holder . . . to possess specified areas of public land" and "[a] certificate given to someone who purchases public land stating that the purchase price has been duly paid"). The Legislature of the Republic of Texas expressly categorized any such land scrip records relating to state officials as "archives":

> Be it enacted, by the senate and house of representatives of the republic of Texas, in congress assembled, That it shall be the duty of every person or persons, who may have in his or their possession or ***control any titles or documents whatever, which relate to lands, and which by the laws now or hereafter existing in Texas, have been and are considered "Archives,"*** to deliver the same to the commissioner of the general land office, on his order, within sixty days after the final passage of this act.

Joint Resolution Concerning the Public Archives, approved Dec. 14, 1837, 2nd Cong., R.S., § 2, 1838 Repub. Tex. Laws 2, 44-45, *reprinted in* 2 H.P.N. Gammel, *The Laws of Texas 1822-1897*,

at 1386–87 (Austin, Gammel Book Co. 1898) (emphasis added). The Commission contends that the Letter is thus a state record because it is part of a chain of communications between the President of the Republic of Texas and Thomas Toby regarding a land scrip, of which the Commission already possesses other parts of the chain.

The underlying litigation challenges Westmoreland's ownership of the Letter, specifically seeking a determination by the trial court whether the Letter "is a state record." *See* Tex. Gov't Code § 441.192(c); *see also id.* § 441.180(11) (defining "state record" as including any written information "created or received by or on behalf of . . . an elected state official" and includes record information pertaining to officials from Republic of Texas time period). If the court determines the Letter is an unlawfully removed state record, then the Letter is property of the State and must be returned to the custody of the State. *See id.* § 441.192(c); *see also id.* § 441.191(a) (prohibiting state record from being "sold or donated, loaned, transferred, or otherwise passed out of the custody of the state by a state agency without the consent of the director and librarian").

Although the Texas Supreme Court has not directly addressed whether a private party may bring a constitutional takings claim arising from the State seeking to recover records pursuant to Section 441.192 of the Texas Government Code, the Supreme Court's decisions in other analogous contexts are instructive. In *Texas Parks and Wildlife Department v. Sawyer Trust*, the Trust, a private landowner, brought a declaratory action against the Department, contesting the Department's determination that a stream on the landowner's property was "statutorily navigable" and therefore the Department could regulate the taking of sand and gravel from the streambed. *See* 354 S.W.3d at 386–87; *see also* Tex. Water Code § 11.021(b) (stating that water transported through "the beds and banks of any navigable stream within the state" is

7

"the property of the state"). In analyzing whether sovereign immunity barred the landowner's suit, the Supreme Court explained that "[t]he central test for determining jurisdiction is whether the 'real substance' of the . . . claims falls within the scope of a waiver of immunity from suit." *Sawyer Trust*, 354 S.W.3d at 389. Because the dispute in *Sawyer Trust* only concerned "rival claims to ownership of the entire streambed"—i.e., whether the State owned any of the stream at all—the "suit in substance is one to determine title to land" and was barred by sovereign immunity absent legislative consent. *Id.* at 390; *see also id.* at 397 (Jefferson, C.J., concurring) ("The issue here is not whether the Department has taken Trust property but who owns the property in the first place."). The Supreme Court further stated that "where the question of who owns the property is the only issue and title and possession are the only available remedies, the record and the briefs show conclusively that the [private party] does not have a constitutional takings claim for compensation." *Id.* at 392; *see also id.* at 397 (Jefferson, C.J., concurring) ("[I]f all the government has done is claim title, a takings claim is premature." (footnote omitted)). Moreover, the Supreme Court later confirmed that the Court in *Sawyer Trust* had "concluded that a state agency's assertions of ownership of property did not of themselves constitute a taking of the property when the agency had not attempted to take possession of the property." *Porretto v. Texas Gen. Land Office*, 448 S.W.3d 393, 401 (Tex. 2014).

Similar to *Sawyer Trust*, the Commission, through its lawsuit, seeks a judicial determination of the ownership of the Letter. If the trial court determines the Letter is a state record that was removed without authorization by law, then the Letter is property of the State and no unlawful taking has occurred because the Commission has not "taken, damaged, or destroyed" Westmoreland's property, but is rather seeking the return of State property. *See* Tex. Const. art. I, § 17(a). Alternatively, if the trial court determines the Letter is not a state record,

then the Letter is Westmoreland's property and the Commission has no right to the Letter under the record recovery statute. *See* Tex. Gov't Code § 441.192(c). Although Westmoreland asserts "independent" counterclaims, the sole issue and dispute between the parties is ownership of the Letter (determined through the Commission's right of recovery), and therefore there is no basis for Westmoreland to assert a constitutional takings claim. *See Sawyer Trust*, 354 S.W.3d at 390-92. Westmoreland has failed to demonstrate any other legislative consent for waiver of sovereign immunity arising in a state record recovery litigation, and accordingly, the trial court lacks jurisdiction over such constitutional takings counterclaims. *See id.* at 388, 390.[4]

***Unjust Enrichment claim***

The Commission also contends that any unjust enrichment counterclaim, insofar as one may have been raised by Westmoreland, would be barred by sovereign immunity. Unjust enrichment on its own cannot support a waiver of governmental immunity. *See Watson v. City of San Marcos*, No. 03-22-00307-CV, 2023 WL 3010938, at *3 (Tex. App.—Austin Apr. 20, 2023, pet. denied) (mem. op.) (citing *Richardson Hosp. Auth. v Duru*, 387 S.W.3d 109, 114 (Tex. App.—Dallas 2012, no pet.) and *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997, no writ)). Nor has Westmoreland alleged any facts in his petition that support the existence of any contractual, quasi-contractual, or implied contractual obligation arising from the

---

[4] Westmoreland complains that the lawsuit itself "clouded" his title to the Letter and therefore constitutes a "de facto taking," citing *Caffe Ribs, Inc. v. State*, 487 S.W.3d 137, 144 (Tex. 2016). But *Caffe Ribs* did not involve an ownership dispute over the subject property. Even assuming that the Commission's actions could constitute a taking analogous to a condemnation proceeding, the Supreme Court has cautioned that no "de facto" taking occurs merely from "publicly targeting a property for condemnation." *Westgate, Ltd. v. State*, 843 S.W.2d 448, 453 (Tex. 1992); *see also Caffe Ribs*, 487 S.W.3d at 144. Perhaps a takings claim might arise if the attorney general sought "to have the record seized pending the [state record] determination" to avoid the record "being destroyed, mutilated, altered, secreted, or removed from the state," *see* Tex. Gov't Code § 441.192(c), but in the present dispute the Letter has remained in Westmoreland's possession throughout the pending litigation.

recovery of a state record. *See id.* To the contrary, the law expressly authorizes the Commission to recover a state record pursuant to its statutory authority, without reference to (or creation of) any contractual relationship between the parties. *See generally* Tex. Gov't Code § 441.192. Insofar as Westmoreland's pleading raises unjust enrichment, it should also have been dismissed because nothing in those pleadings demonstrates a waiver of sovereign immunity.

### Declaratory Judgment counterclaims

The Commission also contends that the trial court lacks subject matter jurisdiction over Westmoreland's counterclaims under the federal and state UDJA. Generally, "sovereign immunity bars UDJA actions against the state and its political subdivisions absent a legislative waiver." *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 620 (Tex. 2011) (per curiam). In his pleading, Westmoreland bases his UDJA claims on two broad grounds: first, that the Commission has failed to comply with the requirements under the state record recovery statute, and second, that he has various viable takings claims under the Texas and United States Constitutions. As to the former, such assertions about the Commission's alleged failures to comply with statutory requirements under Section 441.192(a) are nothing more than Westmoreland seeking a declaration of his rights under the statute. *See Sefzik*, 355 S.W.3d at 621–22 (explaining that sovereign immunity is not waived when the party only seeks "a declaration of his or her rights under a statute"); *McLane Co. v. Tex. Alcoholic Beverage Comm'n*, 514 S.W.3d 871, 875 (Tex. App.—Austin 2017, pet. denied) (holding sovereign immunity not waived when party not challenging validity of the statute but rather its rights under the statute). As to the latter, we have already held that Westmoreland has failed to assert viable takings counterclaims, and Westmoreland otherwise does not assert any argument challenging the constitutionality of the record recovery statute itself. *See Texas Dep't of Ins. v. Texas Ass'n*

*of Health Plans*, 598 S.W.3d 417, 425 (Tex. App.—Austin 2020, no pet.) (explaining sovereign immunity does not bar UDJA claim when it raises "a constitutional challenge to the statute, not a statutory construction claim"); *see also Patel v. Texas Dep't of Licensing & Regulation*, 469 S.W.3d 69, 77 (Tex. 2015).[5]  Westmoreland's UDJA claims, insofar as they are asserted as part of his counterclaims, are barred by sovereign immunity and the trial court should have granted the plea and dismissed them for lack of subject matter jurisdiction.  *See Sefzik*, 355 S.W.3d at 620.[6]

## CONCLUSION

For these reasons, we reverse the trial court's partial denial of the Commission's plea to the jurisdiction as to Westmoreland's counterclaims and render judgment granting the plea as to Westmoreland's remaining counterclaims.

_____

Darlene Byrne, Chief Justice

---

[5] Westmoreland contends that because his counterclaims constitute "affirmative relief" beyond those raised by the Commission, his UDJA claims should remain viable under *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990).  But again, the UDJA is "not available to settle disputes already pending before a court."  *Id.* (quoting *Heritage Life v. Heritage Grp. Holding*, 751 S.W.2d 229, 235 (Tex. App.—Dallas 1988, writ denied)).  Nor can Westmoreland attempt to save his non-viable takings counterclaims through creatively pleading them as UDJA claims premised on constitutional takings arguments.  *See Texas Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 392 (Tex. 2011) ("Creative pleading cannot be used to effect the loss or waiver of the State's sovereign immunity.").

[6] When, as here, the pleadings affirmatively negate the existence of jurisdiction, "then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend." *Bacon v. Texas Historical Comm'n*, 411 S.W.3d 161, 170 (Tex. App.—Austin 2013, no pet.).

Before Chief Justice Byrne, Justices Triana and Smith

Reversed and Rendered

Filed:   March 22, 2024